## VALLEY SPRING HOG RANCH COMPANY, Appellant, v. FRED PLAGMANN et al.

In Banc, April 1, 1920.

1. GARBAGE: Ordinance: Exclusive Contract: Injunction. An ordinance empowering the city to make an exclusive contract for the hauling and disposal of the city garbage and household refuse, compelling the collector having the contract to remove it, prescribing the dimensions of air-tight metallic vessels in which it is to be placed and the character of vehicles by which they are to be performed, requiring the collector to give bond for the faithful performance of his duties and declaring that the removal by other persons (whether they be owners or agents) is violative of the ordinance, is not only an exercise of the police power, but vests the contractor with exclusive power to collect and remove garbage in the city, and makes its removal by other parties, even if they are engaged only one hour a day in doing so, violations thereof. and subject to injunction, if the ordinance is valid.

2. ———: Statute: Public Health Regulation. Sections 20 and 45 of the Act of 1913, Laws 1913, page 420 et seq., are broad grants to cities of the second class of police power to regulate the public health, and authorize such cities to enact ordinances providing for exclusive contracts for the collection and removal of city garbage and household refuse, and prescribing the use of air-tight

(1)

Valley Spring Hog Ranch Co. v. Plagmann.

metallic receptacles and vehicles of a certain character for haul-
ing them. That decomposing animal and vegetable matter is
detrimental to public health is matter of common knowledge, and
an ordinance providing for its prompt removal is not only au-
thorized by the statute, but is a reasonable regulation in the in-
terest of the public health.

3. ———: Exclusive Contract: Monopoly. An ordinance which au-
thorizes the city to make an exclusive contract for the collection,
removal and disposition of garbage and household refuse violates
no constitutional safeguard of property or personal right, or any
common-law inhibition against monopoly in restraint of trade.
The gathering of garbage, being a matter relating to the public
health, is not a trade, business or occupation in any proper sense,
and the laws pertaining to monopolies or legislation prohibiting
restraint of trade are not applicable to such a contract, whether
it be by ordinance awarded to one or several persons.

4. ———: Property Right in Household Refuse: Appropriation by
City. The value of the owner's property right in garbage and
household refuse removed from the kitchen is so inconsequential
that it is absorbed and lost in the greater rights of the State to
protect such owner and the public from the dire effects of im-
proper methods in the handling and disposition of such deleterious
substances. For his property right therein he is compensated by
sharing in the general public health benefits resulting from their
removal and safe disposal. [Overruling River Rendering Com-
pany v. Behr, 77 Mo. 91.]

5. ———: ———: Constitutional Protection. Neither Section 20 of
Article 2 of the Missouri Constitution, forbidding the taking of
private property for a private use, nor Section 21 of said article,
prohibiting the taking of private property for a public use with-
out just compensation, interferes with the power of the State to
exercise its police powers in the interest of public health, or
makes invalid, as impairing the property right of the owner, a
reasonable ordinance requiring the removal and disposition of
garbage from kitchens, even though the contractor removing it
receives his compensation by feeding it to his hogs. All persons
own their property subject to the restriction that it cannot be used
to injure the public health, and in order to preserve the public
health the city may compel the owner of garbage to remove it at
his own expense. Nor does Section 30 of said article, guarantee-
ing that no person shall be deprived of life, liberty or property
without due process of law, limit the police power.

Appeal from Barton Circuit Court.—*Hon. B. G. Thur-
man*, Judge.

Valley Spring Hog Ranch Co. v. Plagmann.

REVERSED AND REMANDED (*with directions.*)

*John J. Wolfe* and *Mercer Arnold* for appellant.

(1)  Under the general charter powers of the City of Joplin, the city had express authority to pass the ordinance in question and to authorize the contract entered into with plaintiff.  (2)  Such a disposal of garbage is not a taking within the constitutional provision forbidding such taking, but is a proper and salutary police regulation.  Atlantic City v. Abbott, 73 N. J. L. 281; Vantine v. Petitioner, 6 Pick. (Mass.) 187; State v. Payson, 47 La. Ann. 1029; Walker v. Jameson, 140 Ind. 603, 28 L. R. A. 679; Louisville v. Wible, 84 Ky. 290; Re Zhizhuzza, 147 Cal. 328; Dupont v. Dist. of Columbia, 20 App. D. C. 477; State v. Orr, 68 Conn. 101, 34 L. R. A. 279; Coombs v. MacDonald, 43 Neb. 632; State v. Robb, 100 Me. 180, 4 A. & E. Ann. Cas. 275; Reduction Company v. Sanitary Works, 94 Fed. 693, 126 Fed. 29, 199 U. S. 306; Cumberland Gro. Co. v. Baugh, Ann. Cas. 1915 A. 130; Gardner v. Michigan, 199 U. S. 325; Grand Rapids v. DeVries, 123 Mich. 570; Rochester v. Gutberlett, 211 N. Y. 309; Smith v. Spokane, 55 Wash. 219; Oneal v. Harrison, 96 Kan. 339. (3) Garbage in and of itself is a nuisance, and in the exercise of the police power a municipality may control the manner of its collection and disposition, and it is obviously for the interest of the whole public that such offensive offal should be collected by persons under the immediate control of the municipal authorities.  Board of Health v. Vink, 151 N. W. 672; State v. Robb, 100 Me. 180, 4 A. & E. Ann. Cas. 275; Gardner v. Michigan, 199 U. S. 310; Rochester v. Gutberlett, 211 N. Y. 309, 37 Ann. Cas. 483; California Reduction Co. v. Sanitary Reduction Works, 199 U. S. 306.

*H. S. Miller* for respondents.

(1)  The ordinance in question is unconstitutional and void and should not be enforced.  River Co. v.

Behr 77 Mo. 91. (2) The evidence showed, and the trial court so found, that the defendants were engaged in removing garbage either as agents, employees or owners of garbage. That is to say in every instance the defendants either were removing their own garbage or were employed by the owner so to do, either for a straight monetary consideration or under an arrangement for a division of the profits derived from the sale of hogs. City of Richmond v. Caruthers, 79 L. R. A. 1005; Underwood v. Green, 42 N. Y. 140; Schoen v. Atlanta, 97 Ga. 697, 33 L. R. A. 804. (3) It must be conceded that the plaintiff is not particularly interested in the sanitary condition of the City of Joplin. It is a commercial concern, organized for commercial and business purposes. The real property involved is hogs, and hogs are of substantial value. The real question at issue is whether or not the plaintiff can be authorized to invade property rights of the defendants and others, and ruthlessly deprive them of their just rights, or take away that which belongs to them, without just compensation or due process of law. The principal is wrong, is un-American and unjust. Walker v. Jamison, 28 L. R. A. 679; Gregory v New York, 40 N. Y. 273. (4) Garbage is not a nuisance *per se*. We fail to see any distinction between dead animals and garbage from the standpoint of either being a nuisance. The garbage removed by the defendants in the case at bar was not a nuisance *per se* when removed, but liable to become such if permitted to remain too long, and the trial court so found. Likewise it must be admitted that dead animals certainly would become a nuisance if permitted to lie in a public place, street or highway very long. A dead animal will become a nuisance much more quickly than garbage, and be a much more dangerous nuisance than garbage, and the stench arising or resulting from dead animals is many times more offensive than that arising from garbage, and much more unsanitary, and the courts hold with one accord, that dead animals are not *per se* a nuisance. Philadelphia v. Lyster, 3 Sup. Ct. 475; Kussel v. Erie, 8 Pa. Dist. 105; Culliver v. Comm. Co., 65 N. J. L. 167; Iler v. Ross, 64

Neb. 710; 97 Am. St. 676; Landberger v. Chicago, 237 Ill. 112. (5) There has been no violation of the ordinance on the part of the defendants, and judgment here, dismissing plaintiff's bill, should be affirmed. If the defendants were merely employees or agents of owners, working for hire, a straight money consideration or an agreement to share the profits, that they did not violate the ordinance. Rochester v. Gutberlett, 211 N. Y. 309.

GRAVES, J.—Plaintiff is the successor to the original garbage contractor of the City of Joplin, a city of the second class. The city passed an ordinance providing for the care, removal and disposal of the garbage of the city, and further providing for making a contract by which it could give a person the exclusive right of collecting and disposing of the garbage of the city. Pursuant to such ordinance the city entered into a contract with one A. A. Wright (exclusive in terms) by which he was made the garbage man of the city. He complied with the terms of the ordinance, gave the required bond, and entered upon the discharge of his duties. Said Wright incorporated the plaintiff, and transferred his contract rights to it. The defendants are parties who have been gathering and hauling garbage from the city, but with no contract or license so to do. The case was tried in Barton County, and the learned chancellor found the following facts and stated the following conclusions of law:

"The court finds that the garbage ordinance read in evidence was duly passed and approved; that under the authority of this ordinance the plaintiff was given the exclusive authority to gather and remove garbage in the City of Joplin, a city of the second class, by contract duly entered into by the plaintiff with the City of Joplin, in the manner provided by said ordinance; that plaintiff executed a bond to the city for the faithful performance of the contract, as required by the ordinance, which was accepted and approved by the city, and entered upon the performance of its duties under the con-

tract and ordinance, and expended a large amount of money in the preparation for and in the performance of its duties under the contract and ordinance, and was and is engaged in complying with the terms and conditions of same;

"That defendants were, at the time of filing the bill, and are now, engaged in removing garbage in violation of the ordinance, as either agents or employees or owners of garbage, by agreements to purchase or to share the profits when fed to hogs;

"That garbage so removed by defendants is of some value for the purpose of feeding hogs and chickens, and not offensive or detrimental to health at the time removed by defendants, but liable to become so, unless promptly removed.

"The law is clear that injunction is the proper remedy, and that this ordinance and contract is not a monopoly, as understood by that term; and the only question left for determination is, as to whether or not this ordinance is void as being violative of Section 20 of Article II of the Constitution of Missouri, which prohibits the taking of private property for private use, etc.

"The great weight of authority in the United States is, that such taking of private property as a sanitary precaution is not violative of such constitutional inhibition.

"It is held by numerous authorities that such ordinances, under modern conditions, are a necessary precaution to prevent the spread of disease; that it is the only way the health of the inhabitants of a city can be protected from decaying matter and disease producing germs; that the value of property interest in such property, as garbage, is so small that the sanitary precaution more than compensates for the property loss in such cases, and so strongly do these authorities, and the reason upon which they are based, appeal to me, that this court, hesitates not to follow them; but, after much consideration I am of the opinion the doctrine of the River Rendering Co. v. Behr, 77 Mo. 91, is in conflict with the rule so stated and the modern authorities in the United

States. While the decision in that case was rendered more than thirty-six years ago, when the necessity for proper sanitation was not as fully appreciated as in recent years, this court feels bound by it; and, following that case, as construed by this court, it feels bound to find against the plaintiff's contention; and the bill is dismissed and judgment against the plaintiff for costs.

"The importance of this question to all the cities of the size of Joplin, and larger, is so important that this court begs pardon for exceeding jurisdiction to the extent of urging counsel to move the Supreme Court to advance this case, to the end that we may have an early decision in the light of present conditions and modern authorities."

From an adverse judgment the plaintiff appealed, and this court advanced the cause upon our docket. Additional facts, if required, may well be left to the opinion.

I. We have examined the evidence with the view of determining the correctness of the chancellor's findings of fact, as we are interested more in these than in his conclusions of law. These findings are fully justified by the evidence, so that the case is one purely of the applicatory law to such facts. The court finds (1) that the ordinance relied upon by plaintiff was duly enacted, (2) that plaintiff was, by contract, duly made the only party authorized to remove and dispose of the city garbage, (3) that plaintiff had gone to much expense in fitting up a hog ranch for the disposition of the garbage obtained under their contract, (4) that such garbage was of value to plaintiff for the purpose used, (5) that defendants and each of them were removing garbage in violation of the ordinance, and to the detriment and damage of plaintiff under the contract, (6) that defendants were removing it as either agents or employees or owners of garbage, and (7) that such garbage would become offensive and detrimental to health, "unless promptly removed."

Facts of Case.

As to these facts, and applicatory law, we have raised several questions. Of these in order.

II. It is urged that defendants were not engaged in the business of handling garbage, and hence were not within the terms of the ordinance. It is true that these parties were not exclusively engaged in garbage hauling.

The Ordinance. Further it is true that but a small part of their time was devoted to the handling of garbage. In their brief it is suggested that they were only so engaged for about one hour per day. This we think suffices to make their acts violative of the ordinance. By Section one of the ordinance the citizen is prohibited from throwing garbage or household refuse into the streets or alleys or other public places of the city, and are required to put all such garbage in air-tight metallic receptables. "Garbage" and "household refuse" are duly defined in this section. Then Section 2 of the ordinance reads:

"It shall be unlawful for any person, firm or corporation to engage in, pursue or carry on the business or occupation of the collecting of garbage in the City of Joplin, Missouri, without first procuring a contract from the City of Joplin so to do, and the City of Joplin may, for the benefit of the public health, contract with a suitable person, firm or corporation, for the exclusive right to dispose of the garbage in the City of Joplin."

Section 3 provides for the garbage contractor's bond; Section 4, for the times of the collection of the garbage and household refuse, and the manner of handling it, and Sections 5 and 6 read thus:

"Sec. 5. Every cart or vehicle used to cart garbage and other household refuse in or about or along any street, alley, highway or thoroughfare of this city, shall be fitted with a good substantial metal box thereon, the sides and ends of which shall not be less than twenty-four inches high, so that no portion of such garbage shall be scattered, thrown or dropped into such street, alley, highway or thoroughfare, and all other carts and vehicles

used in hauling such offensive matter shall have the box thereon closely covered with sufficient covering and so tightly fitted as to prevent the escape of any of the contents of effluvia herefrom.

"Sec. 6. Every person required by Section one of this ordinance to keep and use the receptacle therein provided for, shall cause the contents to be removed therefrom as provided in Section four of this ordinance; provided that when there is a garbage collector who has a contract with the City of Joplin, then it shall be the duty of such collector to remove all garbage as provided in this ordinance."

Section 7 provides the penalty for violating any terms of the ordinance, and Section 8 is the emergency clause, in which it is alleged that an emergency exists, because "the above ordinance being necessary for the preservation of the public health."

It will be seen that the ordinance not only empowers the city to make an exclusive contract for the disposal of the city garbage and household refuse, as provided for by Section 2 thereof, but by Section 6 such garbage collector, having the city contract, is compelled to remove the garbage under terms of the ordinance. Not only so, but the character of the vehicle upon which it is to be removed is prescribed, showing the clear intent of the city legislative body. That intent was to have a city garbage collector, with properly fitted vehicles, in order that pestilence and disease might not follow the wake of the scavenger. Not only so, but that such collector should be under bond for the faithful performance of the work. The ordinance, after the making of the contract, does not contemplate the removal of garbage by other parties, and if such other parties do remove it (whether they be owner or agent) they violate the ordinance. The ordinance is one in the exercise of the police power, which has for one of its purposes the protection of the public health. But of this later. For this point, suffice it to say that the ordinance is broad enough to cover the

acts of the defendants, and to make them violaters of such ordinance. Its validity is the vital question.

III. The powers of a city of the second class are very broad. *Vide* Laws 1913, p. 420 et seq. This act is the charter of cities, such as Joplin. Sections 20 and 45 of the act relating to the public health and general welfare of such cities, are broad grants of the police power, in so far as the public health is concerned. The legislative spirit has kept abreast with scientific discoveries as to the cause for the spread of disease. The paramount idea is the protection of public health, and this charter of cities of the second class fully authorizes the passage of an ordinance such as we have before us in the instant case. We take judicial notice of things, scientific or otherwise, which are generally known. In these modern days the child in the public school is taught the lessons of hygiene gathered by the scientific investigators. In this country the knowledge of the school child is the knowledge of the public, as well as the knowledge of the legislator or jurist. The laws of hygiene are of common knowledge. That decomposing animal and vegetable matter is detrimental to public health is common knowledge. That matter coming from the household, or hotel kitchen, will shortly decay and effect the public health is a matter of common knowledge. That the common house fly will spread the death-dealing germs from such decomposing matter is a matter of common knowledge.

The Statute.

The ordinance in question seeks to protect the health of the city in that (1) it compels the citizens to use air-tight metallic receptacles for garbage, (2) that it prescribes safe instruments of conveyance for such garbage from these receptacles to the place of disposal, and (3) that it places the collection of such garbage in the hands of a bonded person, who must use vehicles of conveyance as prescribed by the ordinance.

The whole scheme is one calculated to reduce to a minimum the spread of disease, and to have a strict

supervision by the municipality. The air-tight can of garbage on the kitchen porch is safe from the inroads of the pestiferous fly. The vehicle for the conveyance of the garbage through the public thoroughfares of the city is required to have a metal box thereon for receipt of such garbage, and this box must be so constructed that neither particles of garbage, nor the "effluvia therefrom" can escape. And last, but not least, a bonded agent of the city is required to handle and dispose of such garbage. To our mind the ordinance is but the fair exercise of the police power lodged in cities of the class here involved. We take the contentions of defendants next.

IV. It is first suggested that the ordinance is void because it authorizes the city to make an exclusive contract for the removal and disposition of garbage. We are cited to no Missouri case, as covering the proposition. It has, however, been passed upon elsewhere, with singular unanimity. Thus in State v. Robb, 100 Me. l. c. 188, it is said:

*Exclusive Contract.*

"The respondent says that such an ordinance as this, even if it does not offend against express constitutional safeguards of property rights, is, under general common law rules, void as creating a monopoly and as in restraint of trade. The question may be viewed in two aspects, so far as this respondent is concerned: first, as respecting the prohibition which the ordinance in effect is, against the collection as vendee or agent of others of house offal, and the carrying of it through the streets of the city, that is, the prohibition of the business of scavenging house offal by anyone except the appointee of the Sanitary Committee; and, secondly, the prohibition against the owner's carrying through the streets the offal made by himself. Upon the first point by far the greater weight of authority supports the ordinance. In the Slaughter House Cases, 16 Wall. 36, it was held that the grant of an exclusive right or privilege in pursuance of the exercise of the police power

of the State, in the promotion of health and comfort, was not only not forbidden by the Fourteenth Amendment to the Constitution, but was clearly within the power of a State Legislature and was not a monopoly at common law. The prohibition of the common law against monopolies extended only to such franchises and agreements as tended to restrict trade, and had no application to mere regulations in the interest of public health or morality. [20 Am. & Eng. Ency. of Law, 851, and cases cited.]"

In the case of City of Grand Rapids v. De Vries, 123 Mich. l. c. 582, Long, J., said:

"The gathering of garbage is not a trade, business or occupation in any proper sense, and such employment does not come under the doctrine in reference to monopolies, or in reference to legislation in restraint of trade. It is a matter in which the public agencies are authorized to pursue the best means to protect the public health. The charter provisions recognize the fact that certain matter may be deleterious to public health, and dangerous to persons or property, and thus become a public nuisance; and the charter makes it the duty of the common council to declare any place, thing, or matter which may be deleterious to public health, or dangerous to persons or property, a public nuisance, and the council is given power to abate such nuisance. The ordinance treats garbage or offal as deleterious to public health, and directs the manner of its disposition for the benefit of the public health. It is one of the police regulations of the city for the benefit of the public health."

So too in Reduction Company v. Sanitary Works, 199 U. S. l. c. 317, it is said:

"The exclusive right granted to Sharon, his associates and assigns, was certainly a privilege, and the board of supervisors had power to grant it in order to protect the public health. But independently of the above statutes the board had power, under the Constitution of the State, to make such sanitary regulations

as were not inconsistent with the general laws, and that broad power carried with it the power, by contract and ordinance, to guard the public health in all reasonable ways. The defendants criticise the ordinances because they give the exclusive privileges in question for a period of fifty years. But whether the period during which such privileges might be exercised should be long or short, was a matter in the wise discretion of the board and determinable wholly upon grounds of public policy. It may be that grants by public authority of privileges to be exercised for the benefit or in behalf of the public ought never to be for long periods. But it suffices to say that no such consideration can control the action of the judiciary."

In State v. Orr, 68 Conn. l. c. 110, the court says:

"Under these provisions, and the authority of the Special Act of 1895, the board of health might contract with a single person to collect and remove garbage from the entire city, or with several persons to collect and remove it from as many different portions of the city. It might also make such contracts with respect to part of the city, or to certain buildings in part of the city, and leave the collection and removal of garbage from other places open to those who obtained from its clerk a proper permit, and provided proper means of transportation. By neither method of procedure would any monopoly be created, by which the common rights of citizenship would be infringed upon. [The Slaughter-House Cases, 16 Wall. 36.; Alpers v. San Francisco, 32 Fed. Rep. 503; National Fertilizer Co. v. Lambert, 48 Fed. 458.]"

Other cases might be cited, but the foregoing, and the cases cited therein, will suffice. They all go to the one thought that the municipality is exercising its police power, in the interest of the public and is not establishing a business monopolistic in character. Whether the city has one or more agents commissioned for the purpose is wholly immaterial. The municipality may provide for one bonded agent or contractor, or it may

provide for more. It is not in either event establishing a monopoly, because dealing solely in the exercise of the police power in the interest of public health, and is not undertaking to run, establish, or license a business of any kind.

The fact that this ordinance gives the city the right to make an exclusive contract for the collection and disposal of garbage does not render the ordinance bad.

V. It is next urged that the ordinance is destructive of property rights. It is true that there may be an ownership of garbage from the kitchen, but the value of the owner's rights therein is so inconsequential that they are absorbed and lost in the greater rights of the State to protect such owner and the public

Property Rights. at large from the dire effects of improper methods in the handling and disposition of the same. Garbage if allowed to accumulate and decompose becomes a public nuisance, and the court's finding in this case so shows. But a short time is required to convert the harmless table scrap into a pestilence-breeding nuisance, when it is intermingled with other refuse from the kitchen.

The answer of defendants in this case invokes Sections 20, 21 and 30 of Article 2 of the Missouri Constitution. The first relates to the taking of private property for private use. No such question is involved in this case. Here the city through its authorized agent is protecting its citizenship from a continuing public nuisance, detrimental to the public health. The city would even have the power to compel the citizen to dispose of his garbage at his own expense, in order to avoid and abate the nuisance. But all these constitutional questions are well answered in State v. Robb, 100 Me. l. c. 185, whereat it is said:

"The constitutional guaranties that no person shall be deprived of life, liberty or property, without due process of law, and that no State shall deny to any person within its jurisdiction the equal protection of the

laws were not intended to limit the subjects upon which the police power of a State may lawfully be exerted. [Minneapolis Railway Co. v. Beckwith, 129 U. S. 26; Jones v. Brim, 165 U. S. 180.] In Barbier v. Connolly, 113 U. S. 27, the court used this language: 'But neither the amendment (XIVth)—broad as it is—nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education and good order of the people.' [See The Slaughter House Cases, 16 Wall. 36.] Proper police regulations 'though they may disturb the enjoyment of individual rights, are not unconstitutional, though no provision is made for compensation for such disturbances. They do not appropriate private property for public use, but simply regulate its use and enjoyment by the owner. If he suffers injury it is either *damnum absque injuria,* or, in the theory of the law, he is compensated for it by sharing in the general benefits which the regulations are intended and calculated to secure. The citizen owns his property absolutely, it is true; it cannot be taken from him for any private use whatever, without his consent, nor for any public use without compensation; still he owns it subject to this restriction, namely, that it must be so used as not to injure others, and that the sovereign authority may, by police regulations, so direct the use of it that it shall not prove pernicious to his neighbors, or the citizens generally.' [1 Dillon on Mun. Corp. sec. 141.] To the same effect are the decisions of this court in Wadleigh v. Gilman, 12 Maine, 403, and Boston & Maine R. R. Co. v. County Commissioners, 79 Maine, 386, in the latter of which cases this whole question is fully discussed. [See, also, Preston v. Drew, 33 Maine, 558; State v. Gurney, 37 Maine, 156.] Injurious property may be seized and confiscated. [Fisher v. McGirr, 1 Gray, 1; Train v. Boston Disinfecting Co., 144 Mass. 523.]

"The preservation of the health of the inhabitants is one of the most important purposes of municipal

governments, so important that in England reasonable by-laws in relation thereto have always been sustained as within the incidental authority of municipal corporations to ordain. [1 Dillon on Municipal Corp. sec. 369.] And reasonable regulations for the purpose of promoting the health of the citizens are clearly within the police power of the State. Such is the law everywhere. [See~1 Dillon on Municipal Corp., secs. 144, 369; cases cited in 22 Am. & Eng. Ency. of Law, 922; Cooley on Constitutional Limitations, 244.] It may, therefore be regarded as settled that reasonable municipal health regulations, under the authority of the State, are not void as taking private property without due process of law, or as a taking of private property without just compensation.''

To like effect is Reduction Company v. Sanitary Works, 199 U. S. 1. c. 323:

''Be all this as it may, the cremation and destruction of garbage and house refuse, under the authority of the municipal authorities, proceeding upon reasonable grounds, and at a place designated by law, as a means for the protection of the public health, cannot be properly regarded, within the meaning of the Constitution, as a taking of private property for public use, without compensation, simply because such garbage and house refuse may have had, at the time of its destruction, some element of value for certain purposes. With the knowledge of the householder the scavenger receives the garbage and refuse matter, that which, if separated, might have value, being mingled with that which is, in itself, noxious and worthless. The entire mass goes into the same covered wagon, and the authorities are not bound, before its destruction at the crematory, to cause the good to be separated from the bad, but could require, as the ordinances in question did, that the substance be promptly conveyed to the designated crematory and destroyed by fire. Such a disposition of the contents cannot be regarded as a taking of private property for public use without compensation.''

"This court has said that 'the possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community. Even liberty itself, the greatest of all rights, is not an unrestricted license to act according to one's own will.' [Crowley v. Christensen, 137 U. S. 86, 89.] In Mugler v. Kansas, 123 U. S. 623, 669, it appeared that certain distillery property in Kansas was purchased, at a time when it was lawful in that State to manufacture and sell spirituous liquors, but which property, by reason of the subsequent prohibition of such manufacture and sale, had become of no value, or had materially diminished in value. The owner insisted that by the necessary operation of the prohibitory statute, his property was in whole or in part taken for public use without compensation. But this court said: 'The power the States have of prohibiting such use by individuals of their property as will be prejudicial to the health, the morals, or the safety of the public, is not—and, consistently with the existence and safety of organized society, cannot be—burdened with the condition that the State must compensate such individual owners for pecuniary losses they may sustain, by reason of their not being permitted, by a noxious use of their property, to inflict injury upon the community. The exercise of the police power by the destruction of property which is itself a public nuisance, or the prohibition of its use in a particular way, whereby its value becomes depreciated, is very different from taking property for public use, or from depriving a person of his property without due process of law. In the one case, a nuisance only is abated; in the other, unoffending property is taken away from an innocent owner.' In Sedgwick's Treatise on Statutory and Constitutional Law the author says that 'the clause prohibiting the taking of private property without compensation is not intended as a limitation of those police

powers which are necessary to the tranquillity of any well-ordered community, nor of that general power over private property which is necessary for the orderly exercise of all governments. It has always been held that the Legislature may make police regulations, although they may interfere with the full enjoyment of private property, and though no compensation is made.' [Pp. 434, 435.]

"Without further discussion, we hold, for the reasons stated, that the Circuit Court and Circuit Court of Appeals properly refused to adjudge that these ordinances were invalid."

The Robb case, supra, reviews a long line of cases covering both of the vital questions in this case, and where that case is unofficially reported in 4 Am. & Eng. Ann. Cases, 275, will be found a case note giving further citations.

Of course every ordinance in the exercise of the police power must be reasonable, but as shown above there is nothing in this Joplin ordinance which is unreasonable. The city had the right to contract with either one or more than one person to collect and dispose of its garbage. Nor is the value of garbage such as precludes the exercise of the police power for its destruction or otherwise disposal.

We are, however, cited to the case of The River Rendering Company v. Behr, 77 Mo. 91. This case reached this court by appeal from the St. Louis Court of Appeals, and the opinion of that court is found in 7 Mo. App. 345. Many of the courts draw a distinction between garbage (which is concededly of small value even during the time between its creation, and the time of its decay or decomposition) and dead animals, which for certain purposes have some substantial value. In some cases it is held that a reasonable time (short time) should be given the owner to get what value there was in the carcass. We might distinguish the instant case from the Behr case, supra, on the theory of there being substantial value to the carcass, but we deem that case out of harmony with the great weight

of authority. The opinion of the Court of Appeals is more in line with modern authority on the subject.

The ever present house-fly and other flies will reach the carcass of dead animals as quickly as they reach the open garbage can. Germs of disease may be thus spread in thickly populated communities. Even the additional value of carcasses should not curb the police power in regulating their removal and disposition.

This case in my judgment should be overruled, to the end that we may get in line with the great trend of modern authority.

The right of plaintiff to an injunction is not otherwise questioned in the brief of respondents. The judgment *nisi* should be reversed, and the cause remanded with directions to grant to plaintiff the injunction prayed. It is so ordered.

All concur.