**STATE of Missouri, Plaintiff-Respondent,**

v.

**Ralph SUMMERS, Defendant-Appellant.**

**No. 34586.**

Missouri Court of Appeals,
St. Louis District.

Dec. 19, 1972.

Michael J. Ebeling, St. Louis, for defendant-appellant.

Thomas W. Shannon, Pros. Atty., James I. Bucher, Asst. Pros. Atty., Robert Hoffman, Assoc. Pros. Atty., St. Louis, for plaintiff-respondent.

WEIER, Judge.

Defendant was charged with failing to support his infant son, contrary to the provisions of § 559.353, RSMo 1969, V.A.M.S. On trial to the court without a jury, he was found guilty and sentenced to six months in the city workhouse.

On appeal defendant contends that the evidence failed to support the charge in the information to the effect that his dereliction was "without good cause" in that the evidence merely showed his earnings in the year 1970 without reference to the month of December, the time of the alleged offense. Defendant further contends there was a failure of proof in that there was no evidence that on December 11, 1970, the date alleged in the information, defendant failed to support his child.

As to the first contention based on "good cause", the evidence disclosed the Ford Motor Company paid defendant as compensation for services for the year 1970 the sum of $14,195.74. As to the second contention, hearsay evidence, unobjected to by defendant, established that "he refused to pay any support". In answer to the question "[F]rom December of '69 till December of '70, did he give you any money?" the complaining witness replied, "No, he hasn't".

This evidence and the reasonable inferences that may be deduced therefrom are sufficient to sustain the conviction on the elements embodied in the words "without good cause, [did fail, neglect and refuse] to provide adequate food, clothing, lodging, or medical or surgical attention". § 559.353, supra. As to the narrow issue whether such proof must refer to the exact date charged, that is, December 11, 1970, defendant's position is again without merit. Notwithstanding a definite date is alleged in the information, the state may introduce evidence that the offense was committed on another day or at another time than that alleged in the information provided it was within twelve months, or the period of limitation, before the information was filed. State v. Campbell, Mo.App., 260 S.W. 542, 543[2]; State v. Payne, Mo., 452 S.W.2d 805, 809[12]; Rule 24.11, V.A.M.R.

Defendant's third contention of error is directed at the trial court's denial of his motion to require the complaining witness and her child to undergo a blood test. Here the complaining witness asserted by her testimony that defendant was the putative father of her child. Defendant denied the charge. The evidence is void of any admission by defendant that he was the child's father, except that by her testimony complainant stated he had offered to pay her hospital bill, an offer which he denied. Sexual intercourse was admitted, but defendant testified this had only occurred up to the last part of the summer or early fall of 1968. The child was prematurely born on August 2, 1969. The complaining witness on the other hand recounted acts of intercourse running into her term of pregnancy. She denied having relations with other men. Her testimony was uncorroborated.

■ To sustain a conviction for nonsupport, the state is required to establish parentage as an element of the offense. And in this, the state has the burden of proof. State v. Williams, Mo.App., 349 S.W.2d 375, 377[6]; State v. Brown, Mo. App., 446 S.W.2d 498, 499[2]. With charge and denial, accusation and protestation, and the truth lying somewhere in an intimate relationship which here could at best be known only by those involved, any aid to the determination of the truth of parentage would be of inestimable value to the trier of facts. We are therefore being called upon to determine whether blood tests are reliable evidence in a filiation determination and whether the denial of defendant's motion to compel the complaining witness and the child to submit to tests is reversible error in a criminal prosecution for non-support.

Missouri is not a state which has adopted the uniform act on blood tests to determine paternity. (9 Uniform Laws Annotated, Miscellaneous Acts, 1967 Pocket Part, p. 58.) Such laws, where adopted, generally provide that where the testimony of all experts based upon blood tests properly made lead to the conclusion that an alleged father is not the father of the child, the question of paternity must be resolved accordingly. Blood tests are, of course, made compulsory under court order and supervision. (See 9 Uniform Laws Annotated, Miscellaneous Acts, 1957, supra, p. 102.) But our Rule 60.01, V.A.M.R., provides in part: "In an action in which * * * the blood relationship of a party, or of an agent or a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a * * * blood examination by a physician or to produce for such

examination his agent or the person in his custody or legal control." Pertinent parts of the note following this rule state: "This rule brings Missouri generally abreast of the Federal practice and incorporates three recommended improvements to Federal Rule 35; namely, (1) fixes the right to blood test; * * *." The notes of the Federal Advisory Committee and the amendments recommended in 1955 are quoted in the Missouri Committee note: " 'The authorization for examination of a person in the custody or under the legal control of a party will allow, for example, * * * a blood examination of an infant in a paternity action, * * *.' " These committee notes are explanatory in nature and are comparable to legislative committee reports pertaining to legislation "* * * and are to be considered in determining the scope and meaning of the rule * * *." State ex rel. Gray v. Jensen, Mo. (en banc), 395 S.W.2d 143, 145. It is obviously clear from reading the rule and the committee note, our Supreme Court definitely had in mind paternity controversies when it authorized the taking of blood tests in civil cases. And it appears equally true that the court considered such tests valid and their results competent evidence in paternity cases.

■ There seems to be a vacuum in Missouri law on the admission and validity of blood tests to refute a claim of paternity. This is probably due to the fact that our state has never enacted a bastardy statute and, in the past, our courts have consistently held that the father of an illegitimate child was under no enforceable duty to support the child by civil proceeding even though he might be subject to criminal penalties under § 559.353, supra. In 1968, the case of R—— v. R——, Mo., 431 S.W.2d 152, 154[2], overruled prior cases and it is now clear that the paternity of an illegitimate child and the liability of the putative father for support are matters which may be properly adjudicated. In re L——, Mo.App., 461 S.W.2d 529, 539[1].

The only Missouri case found in our research which has considered the weight and sufficiency of blood tests to determine paternity is Rasco v. Rasco, Mo.App., 447 S.W.2d 10. There a child was born to a married couple nine months and nine days after they last cohabited. Although the lower court accepted the testimony of a pathologist as to the result of blood tests and found the child not to be the child of the husband, the Kansas City Court of Appeals refused to accept this determination and reversed. The Rasco court considered the presumption of legitimacy that exists as to the offspring of married couples so strong that it could not be overcome by medical evidence, especially where the doctor refused to say that it was impossible for the husband to be the father.[1] Here, we have no presumption since the mother and alleged father were not married.

Despite the skepticism exhibited by the court in Rasco, supra, 447 S.W.2d, at p. 14[7], the reliability of blood tests properly given to prove non-parentage in certain cases of blood groupings has become unquestioned in the scientific and medical world. At first, courts were reluctant to give proper reception or weight to the blood test as a means of proving non-paternity. This reluctance is wholesome until such time as the method used and the results determined are scientifically established facts recognized by the medical and scientific world. And at this time such reluctance should cease. As was stated in a reference work organized, authored and edited by Dr. R. B. H. Gradwohl, former director of the police laboratory, Metropolitan Police Department, St. Louis:

"Judicial disregard of blood test exclusions is no doubt due to a misconception of the true nature of the exclusion,

---

1. As to the current status of the legitimacy presumption, see In re L——, supra, Mo.App., 461 S.W.2d 529; T—— v. T——, Mo.App., 447 S.W.2d 795.

which is a demonstrable and scientific fact of life. It is neither controversial nor in the field of expert testimony. The pathologist whose report excludes paternity is not giving 'opinion' evidence. He is testifying to * * * a fact of life and Nature."

Gradwohl, *Legal Medicine* (1954), p. 576.

See, Schatkin, *Disputed Paternity Proceedings,* 3rd Ed. (1953).

■ ■ We take judicial notice of facts, scientific or otherwise, which are matters of common knowledge. Valley Spring Hog Ranch Co. v. Plagmann, 282 Mo. 1, 220 S.W. 1, 3[3]. Blood types are matters of scientific knowledge accepted by the medical profession. Certain characteristics of the blood perpetuate themselves in the blood of the parents' offspring. Certainly, with the unanimity of medical authorities on the reliability of blood grouping tests as an indicator of the truth in questioned paternity proceedings and their recognition by our own court rules (Rule 60.01, supra) we are justified in taking judicial notice of the reliability and value of such tests when properly performed by persons skilled in giving them. The law will not hesitate to adopt scientific aids to the discovery of truth where the means to do so have achieved such universal recognition. Our search of the law has caused us to conclude that we must take judicial recognition that although serological blood tests to determine type or group cannot indicate that a particular person is the father of a child, they can be used to establish that a particular person is not the father. These tests when properly performed and interpreted, are recognized to be accurate and the results are admissible to establish non-paternity. See annotations, 163 A.L.R. 940, 46 A.L.R.2d 1000; State v. Damm, 64 S.D. 309, 266 N.W. 667, 104 A.L.R. 447 (affirming on rehearing 62 S.D. 123, 252 N.W. 7, 104 A.L.R. 430).

■ In a criminal case it would be a denial of justice to refuse a defendant his motion to have blood tests made of a mother and her child in a proceeding where he is accused by the mother of failure to support the child and in which the question of paternity is an essential element, while at the same time granting him that right in a civil action in which paternity is an issue and the mother seeks a money judgment for non-support of an illegitimate child. The defendant was entitled to have blood tests made of complainant and her child. The trial court, while protecting the rights of all concerned, should, in the exercise of sound judicial discretion, order such blood tests at the expense of the moving party. When properly made by competent persons, evidence as to the tests and their results, if they support defendant's denial of paternity, shall be admissible in the evidence.

For error in denying defendant's motion to compel blood tests, the judgment is reversed and remanded for new trial.

DOWD, Acting C. J., and CLEMENS, J., concur.