STATE of Missouri, ex rel. D___ K___ B___, a minor By her next friend and mother, V___ R___ B___, Respondents,

v.

W___ G___ L___, Appellant,

and

G___ F___ B___, Third Party Respondent below.

No. 45524.

Missouri Court of Appeals, Eastern District, Division Three.

May 17, 1983.

Motion for Rehearing and/or Transfer Denied July 6, 1983.

E. Rex Bradley, Louisiana, for appellant.

Victoria S. Schwartz, Michael R. Henry, Jefferson City, for respondents.

CRIST, Judge.

The State of Missouri, as assignee of child support owed to the mother of the minor child herein and on their relation, brought this four-count action against the mother's ex-husband (husband) and against the child's putative father (hereafter defendant) to establish the child's paternity, fix her father's monthly child support obligation, and recover from the father the amount of state funds paid as Medicaid and public assistance benefits for the child and mother. The trial court sustained husband's motion for a directed verdict at the close of the State's evidence, and entered judgment against defendant on a jury verdict against him on all counts. Defendant appeals. We affirm.

■ Though one of defendant's points on appeal assigns error to a jury instruction, the instruction is not set out in defendant's

brief as required by Rule 84.04(e). The error, if any, is not presented for appellate review. *Stegan v. H.W. Freeman Const. Co., Inc.,* 637 S.W.2d 794, 797 (Mo.App. 1982).

■ Defendant's remaining point on appeal is:

THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE BLOOD TESTS WHICH WERE DESIGNED TO SHOW A STATISTICAL PROBABILITY OF PATERNITY AND WERE NOT USED FOR THE EXCLUSION OF PATERNITY.

Defendant also argues in his brief that the blood test results (to which we will return) lacked a proper evidentiary foundation and were hearsay. But neither claim was made in defendant's motion for new trial or in his Point Relied On, and we consider them waived. *State Farm Automobile Ins. Co. v. Jessee,* 523 S.W.2d 832, 835 (Mo.App.1975). We take up only defendant's point that blood test results offered as evidence of paternity rather than proof of nonpaternity are inadmissible as a matter of law.

■ Mother and husband separated in January or February, 1979, and dissolved their marriage the following December— just two months before the child herein was born. Mother applied for public assistance shortly after the child's birth, and stated then that defendant and not husband was the child's father. When defendant denied paternity, the State obtained court-ordered blood samples from mother, child, husband, and defendant, see Rule 60.01(a), which were sent to the Minneapolis War Memorial Blood Bank's paternity testing program. Defendant's claim of error springs from his test results being admitted into evidence.

The Blood Bank's director for the past seventeen years, Dr. Herbert Polesky, testified at trial as an expert on the Bank's testing program and procedures as well as on the results of the specific tests used to analyze the parties' blood samples. Dr. Polesky's qualifications as an expert are not questioned, so it is enough to say he is a physician with specialties in clinical pathology and blood testing, who has published and testified extensively on paternity testing. Dr. Polesky testified the Bank used a battery of routine, well-accepted tests to comparatively analyze sixteen separate sets of genetic traits or "markers" common to the parties' red blood cell antigen system, red blood cell enzymes, and serum protein. The object, first, was to see whether it was genetically impossible for either husband or defendant (or both) to be the child's father; and second, to obtain data for calculating the probability of paternity of one not thus excluded. Two of the traits analyzed showed husband's paternity was a genetic impossibility. The tests excluded husband, but further showed it was 91.1 percent certain the child's father is defendant. And Dr. Polesky testified the battery of tests used here on defendant's blood sample fail to exclude falsely-accused putative fathers only 5 percent of the time.

The premise for defendant's Point Relied On set out earlier is *State v. Summers,* 489 S.W.2d 225, 229 (Mo.App.1972), where we took judicial notice that "serological blood tests to determine type or group cannot indicate that a particular person is the father of a child, [but] they can be used to establish that a particular person is not the father." We concluded those blood test results "are admissible to establish non-paternity." *Id.* Bear in mind that of the sixteen genetic traits the blood bank analyzed, only six—the red blood cell antigen systems— pertain to blood groups. It was analysis of those six traits and the other ten that Dr. Polesky reported, and it was the cumulative effect of analyzing all sixteen that yielded the high probability of defendant's paternity. But defendant looks through those facts to what he claims is the rule in *Summers* that blood tests of whatever kind offered as evidence of paternity are inadmissible.

Even generalizing from blood-group testing to blood tests generally, nothing in *Summers* aids defendant's argument. The first-quoted exerpt from *Summers* does not affirm a rule of evidence; it only restates what Wigmore described as the logic employed in blood testing; i.e., "it may be

**220**

possible by the test to *disprove* the alleged paternity of a particular person [but in] no case will it be possible to *prove* by the test the paternity of a particular person." (Emphasis Wigmore's) I J. Wigmore, *Evidence in Trials at Common Law* § 165a, at 612 (3d ed. 1940). Blood tests "disprove" paternity when (as here, in husband's case) they show a particular person's paternity to be a genetic impossibility. In that event, the consensus of authority backs *Summers'* conclusion that "the results are admissible to establish non-paternity." See, generally, Annot., 163 A.L.R. 939, 951 (1946) supplemented by 46 A.L.R.2d 1000, 1003 (1956). It does not follow, however, nor does *Summers* hold, that whenever the results of perfectly acceptable blood tests fail to prove nonpaternity, those results become inadmissible as evidence of paternity. It may be that any one or combination of these tests yields a probability of paternity so low or inconclusive as to be devoid of probative value. Whether that is the case is a matter for the trial court to decide, and it may exclude such test results on a proper motion. But tests that are probative of paternity ought not be excluded as evidence of paternity, or be allowed in evidence only if they conclusively prove it.

The trial court did not err by admitting into evidence the results of defendant's blood tests for the purpose of proving his paternity of the child.

The judgment is affirmed.

CRANDALL, P.J., and REINHARD, J., concur.