Terri LONNING, Plaintiff–Appellant,

v.

John LEONARD,

v.

Robert LONNING,
Defendants–Respondents.

No. 53749.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 20, 1988.

Thomas A. Burke, III, St. Charles, for plaintiff-appellant.

Reginald P. Bodeux, St. Charles, St. Louis, for Robert Lonning.

KAROHL, Judge.

This is an appeal by plaintiff mother after judgment in accord with a verdict

which found mother's husband, and not her boyfriend, to be the father of her daughter. Appellant, Terri Lonning, mother, filed this suit on behalf of her daughter, M.B.L. She asked the court to declare her boyfriend, defendant John Leonard, to be the natural father of M.B.L. M.B.L. was born to mother during her marriage to defendant Robert Lonning. Robert Lonning, husband, filed a cross-petition for declaration of paternity requesting that he be determined the father of M.B.L. Defendant, John Leonard, filed an answer in which he denied paternity. On July 30, 1987 a jury found Robert Lonning to be the natural father. The court denied mother's motion for new trial or alternatively for judgment notwithstanding a verdict and this appeal follows.

At trial, Terri Lonning testified that she married Robert Lonning on May 15, 1981, and remained his wife. M.B.L. was born on January 1, 1983. Terri Lonning testified that she signed the birth certificate stating that M.B.L. was born as a child of the marriage of Terri and Robert Lonning. Terri Lonning testified that she had sexual intercourse with John Leonard two to three times a week during February, March, April and May of 1982, all possible months of conception. Terri Lonning denied having sexual relations with any other partner during these months. Robert Lonning, however, testified that he had sexual relations two to three times a week with Terri Lonning during February, March and April of 1982.

Robert Lonning considered himself the father. He testified that Terri Lonning never gave him any indication that he was not the father after his daughter was born. Robert Lonning testified he was present when she was born and when she was baptized. Robert, Terri and M.B.L. lived as a family unit. Two and one-half years later Terri Lonning permanently left the family home with M.B.L. Robert Lonning contributed to M.B.L.'s financial support during the first two and one-half years of her life, then visited her and financially contributed to her needs after the separation.

John Leonard testified that he had no desire to be the father. He never had an interest in being the father. He had spent three hours with the child since her birth. At the time of the trial, M.B.L. was three and one-half years old. He had never made any financial contribution to Terri Lonning for the well being of the child.

Nevertheless, John Leonard signed an affidavit on June 30, 1986, stating M.B.L. was conceived of a union between himself and Terri Lonning during the months of March and April of 1982. He testified that he signed the affidavit because he thought blood tests taken on November 4, 1985, the results of which were attached to the affidavit, proved conclusively that he was the father. At trial, John Leonard denied being the father.

The appeal of Terri Lonning filed against both Robert Lonning and John Leonard claims that the trial court erred in: 1) denying Terri Lonning's motion for a new trial or alternatively a judgment notwithstanding the verdict against defendant Robert Lonning because the uncontradicted evidence established that Robert Lonning was not the father of M.B.L.; 2) denying Terri Lonning's motion for a new trial or alternatively a judgment notwithstanding the verdict because John Leonard admitted that he was the father of M.B.L.; 3) allowing Robert Lonning to introduce certain photographs because they were unduly inflammatory and were not probative or calculated to aid a jury; and, 4) allowing John Leonard to testify that his mother was a descendant of an Indian because the statement was hearsay and irrelevant. We deny the four points on appeal and affirm the decision of the trial court.

Plaintiff, mother, contends in her first point that the trial court erred in denying her motion for a new trial or alternatively a judgment notwithstanding the verdict. She states the evidence was so strongly against Robert Lonning that reasonable minds could not differ on the issue of paternity in light of the American Red Cross expert's testimony that four separate documented paternity tests excluded the paternity of Robert Lonning.

Plaintiff is confronted with the strongest presumption known to law, that a child born in wedlock is the child of the marriage. *J.M.L. v. C.L.*, 536 S.W.2d 944, 945 (Mo.App.1976) (relying on *Simpson v. Blackburn*, 414 S.W.2d 795, 797 (Mo.App. 1967)). The presumption may be overcome by a showing of substantial evidence that is clear, cogent and convincing proof to the contrary of the presumption. *In re L—*, Part II, 499 S.W.2d 490, 492 (Mo. banc 1973).

In the instant case, plaintiff's expert, an employee of the Red Cross, Mary Wallhermfechtel, offered into evidence results of blood tests administered to John Leonard, M.B.L., Terri and Robert Lonning to rebut the presumption that Robert Lonning was the father of M.B.L. In reviewing a jury verdict, the Court of Appeals does not determine credibility of witnesses, resolve conflicts of testimony or weigh evidence; these tasks are properly those of the jury and whether the verdict is against the weight of the evidence is within the exclusive province of the trial court. *Wilkes v. Group Underwriters Mut.*, 715 S.W.2d 308, 310 (Mo.App.1986). The Court of Appeals may not upset a verdict unless it is so palpably unreasonable that reasonable minds can reach no other conclusion about it. *James v. Turilli*, 473 S.W.2d 757 (Mo. App.1971).

"[Blood] tests when properly performed and interpreted, are recognized to be accurate and the results are admissible to establish non-paternity." *G—M—H— v. J—L—H—*, 700 S.W.2d 506 at 513 (Mo.App. 1985) (citing *State v. Summers*, 489 S.W.2d 225, 229 (Mo.App.1972)). Mary Wallhermfechtel testified that results of four blood tests could exclude Robert Lonning as the father. She further testified that the procedure used for at least one of the aforementioned tests did not conform with the current operating policy of the Red Cross. However, she would not vouch for the accuracy of the data and the blood tests performed, nor would she admit that the medical files submitted at trial were accurate. She testified she had not been present when the blood was drawn, did not

know who drew the blood, and did not partake in the analyzation of the blood. She further testified that the data logs were improperly completed for all of the blood tests. Her conclusions were based entirely on the information of the work sheets completed by others and then provided to her. She would not vouch for the accuracy of the test evidence on the issue of paternity. The blood test evidence was suspect in view of these qualifications. Contrary to mother's argument that the test results permitted "no room for doubt," the evidence was, at best, a question of fact. Husband's testimony about access, mother's conduct indicating his paternity and photographs contradicted the test results.

Aside from the medical evidence, evidence abounded that Robert Lonning believed he was and held himself out to be the father. He desired to be the father. He testified he had relations with plaintiff mother. This was evidence which contradicted plaintiff's evidence. Defendant John Leonard had no desire to be involved in the life of M.B.L. He had never had a role emotionally or financially in the care for M.B.L.

The jury was entitled to disbelieve all evidence of paternity which was offered to prove that defendant Robert Lonning was not the father of M.B.L. Under those circumstances, husband's testimony and the presumption of husband's paternity survive a claim that the suspect medical tests were conclusive. The fact dispute was a question resolved by the jury. Point one is denied.

In mother's second point she contends that the trial court erred in denying her motion for a new trial or alternatively a judgment notwithstanding the verdict because John Leonard admitted the truth of the basic facts upon which the claim of Terri Lonning rests when he signed an affidavit stating that he was the father. At trial, John Leonard testified he signed the affidavit. He did so because he relied on the cover sheet of blood test results indicating that he was the biological father. He signed the affidavit, prepared by coun-

sel for plaintiff mother, in the office of her counsel. He also testified that he had always believed he was not the father.

It was within the discretion of the jury to accept Leonard's rejection of the affidavit. There was evidence to support a verdict which depended upon a finding the statement of paternity in the affidavit was untrue. The jury chose to accept the subsequent denial. That finding of fact was supported by evidence. Point two is denied.

Plaintiff's third point contends the trial court erred in allowing Robert Lonning to introduce into evidence certain photographs which she characterized as unduly inflammatory and not probative or calculated to aid the jury. We accord great weight to the trial court's decision to accept the photographs. We will disturb its decision to accept the photographs only where we find an abuse of discretion. *Roque v. Kaw Transport Co.,* 697 S.W.2d 254, 256 (Mo. App.1985).

Here, Robert Lonning offered pictures of himself and M.B.L. The pictures were relevant on the issue of how he interacted with M.B.L., events he shared with her, the time he spent with her, and his general interest in her life and well being. They served to rebut plaintiff's evidence that her husband had not held himself out as the natural father.

Furthermore, the pictures were relevant to the issue of physical resemblance between Robert Lonning and M.B.L. The acceptance of the photographs was not prejudicial as both M.B.L. and Robert Lonning were present in the courtroom and before the jury. We find no abuse of discretion in admitting the photographic evidence which was "practical, instructive, and calculated to assist the jury." *Roque v. Kaw Transport Co.,* 697 S.W.2d at 256.

The final point on appeal states that the trial court erred in allowing John Leonard to testify that his mother was a descendant of an Indian because the statement was hearsay and irrelevant. We reject this claim for three reasons. First, we find that acceptance of such testimony constitutes,

at most, nonprejudicial error. Whether John Leonard's mother was a descendant of an Indian is not probative on the issue of his paternity; it does not prove or disprove his status as a biological father. Second, while documented evidence does not exist to corroborate John Leonard's testimony, reception of hearsay or other inadmissible evidence does not dictate a reversal unless there is not sufficient competent evidence to sustain the decision. *Giessow v. Litz,* 558 S.W.2d 742, 750 (Mo.App.1977). In the instant case, we find that sufficient, competent evidence exists to uphold the decision of the jury and the trial court. Third, the statement was not irrelevant and not necessarily hearsay. Matters of family history, relationship and pedigree may be admitted as an exception to hearsay limitations under some circumstances. The present record does not include proof of the required preliminary matters. They may have been provable. Point denied.

We affirm.

GRIMM, P.J., and GARY M. GAERTNER, J., concur.