# THE STATE ex rel. JOPLIN & PITTSBURG RAILWAY COMPANY v. PUBLIC SERVICE COMMISSION.

In Banc, July 22, 1921.

1. **RAIROAD CORPORATION: Issuance of Bonds: Property Right.** The provision of a railroad company's mortgage, covering all present and subsequently acquired properties, that, upon making future extensions and improvements, it could issue other bonds equal to eighty per cent of the value thereof, upon a showing that its net earnings for twelve months had been equal to twice the interest on its existing indebtedness, is a property right, and cannot be destroyed by any unreasonable subsequent legislation in the nature of a police regulation.

2. ————: ————: **Delayed by Failure to Earn Interest: Power of Public Service Commission: Mandamus.** Section 57 of the Public Service Act forbids the Public Service Commission from granting authority to a railroad corporation to issue bonds to cover expenditures that have been incurred more than "five years next prior to the filing of an application with the Commission for the required authorization." Relator had executed a mortgage upon all its existing and after-acquired properties, which contained a provision that it could thereafter issue bonds to the extent of eighty per cent of its subsequently acquired properties, extensions and betterments, upon a showing that its net earnings for the previous twelve months were equal to twice the interest on its existing indebtedness. The extensions and betterments had been made more than five years before it applied to the Commission for authority to issue bonds to the extent of eighty per cent of their value, but the application had been delayed because the earnings had not equalled twice the annual interest charges until a short time before the application was made, and the application was denied because it was not made within five years after the expenditures were incurred, and the company brings mandamus to compel the Commission to grant the authorization. *Held*, that the five-year limitation in the statute was an impairment of the company's contract right to issue the bonds, and for that reason unconstitutional and void, unless it can be sustained on the ground that it is a reasonable police regulation, and it can be sustained on that ground only when it is shown to be in the interest, protection and promotion of the public good;

State ex rel. Railway Co. v. Publ. Serv. Commission.

and the facts do not make it apparent that the public good will in any wise be promoted by withholding from the company authority to issue the bonds, and the Commission is commanded to approve their authorization.

*Held*, by DAVID E. BLAIR, J., dissenting, that, the statute being void, the Supreme Court has no authority, by mandamus or otherwise, to compel the Public Service Commission to approve the authorization nor could the Commission prohibit the company from issuing the bonds; the statute having been declared void in its application to the company, the Commission has no jurisdiction to further consider the subject.

## Mandamus.

WRIT GRANTED.

*Clyde Taylor* for relator.

(1) The five-year limitation provision, if applied to the mortgage contract in question, is unconstitutional, null and void and constitutes no defense for the failure of the Commission to grant the authority in reliance thereon because (a) such provision so applied impairs the obligations of the mortgage contract, and (b) deprives the company of its property, i. e., its vested right to issue these bonds and receive the proceeds thereof, without due process of law. The mortgage is a contract and the mutual rights thereunder rest in contract. 6 Ency. U. S. Supreme Court Reports 765, 782, 874; Fletcher v. Peck, 6 Cranch. 87, 137, 3 L. Ed. 178; Green v. Biddle, 8 Wheat, 1, 5 L. Ed. 547, 570; Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. Ed. 629, 657; Ogden v. Saunders, 12 Wheat. 213, 316, 6 L. Ed. 606. But the so-called five-year provision of Section 57 of the Public Utility Act as applied by the Commission in this case limits, modifies and impairs such contract and the rights of the parties thereunder. (2) The constitutional inhibition is absolute and prohibits any impairment. 6 R. C. L. secs. 319 and 320, p. 329; Curran v. Arkansas, 15 How. 304, 14 L. Ed. 705; McGahey v. Virginia, 135 U.

S. 662, 34 L. Ed. 314; Louisiana v. New Orleans, 102 U. S. 203, 26 L. Ed. 133; Murray v. Charleston, 96 U. S. 432, 24 L. Ed. 764; Cleveland Railroad v. Pennsylvania, 15 Wall. 300, 21 L. Ed. 187; Green v. Biddle, 8 Wheat. 1, 5 L. Ed. 568; Schuster v. Weiss, 114 Mo. 174; Red Rock v. Henry, 106 U. S. 596, 27 L. Ed. 251; Public Service Com. v. Railroad, 271 Mo. 266, 270. (3) Five-year limitation as applied by the Commission cannot be sustained upon the theory that it is an exercise of the state power pursuant to its reservation of authority to alter, amend or repeal charter provisions of a corporation. Shields v. Ohio, 95 U. S. 319, 24 L. Ed. 357; Berea College v. Kentucky, 211 U. S. 66, 53 L. Ed. 90; 7 Fletcher Ency. Corp., p. 7596, sec. 4310; 7 R. C. L. sec. 94, p. 122; Brenner v. Chicago St. Rys. Co., 246 Ill. 170, 138 Am. St. 233. (4) The five-year limitation as applied by the Commission cannot be sustained as a Statute of Limitations. Stephens v. St. Louis Natl. Bank, 43 Mo. 385, 388; Cranor v. School District, 151 Mo. 123; Smith's Commentaries on Const. & Satutory Const., secs. 254, 265; Tice v. Fleming, 173 Mo. 55. (5) The five-year provision as applied by the Commission to the principles of this case cannot be sustained as a valid exercise of police power. State ex rel. v. Stevens, 197 N. Y. 1; United States v. D. & H. Co., 213 U. S. 366; Harriman v. I. C. C., 211 U. S. 411; 6 R. C. L. sec. 266, p. 236; State v. Smith, 233 Mo. 265; State v. Fisher, 52 Mo. 177; 17 R. C. L., 670, 676. (6) Mandamus is proper remedy. 18 R. C. L. 105, 106; State ex rel. v. Turner, 210 Mo. 77. (7) Writ should not be denied because concurrent remedy of appeal or other method of review. State ex rel. v. Elkins, 130 Mo. 109; State ex rel. v. Spencer, 166 Mo. 271; Carter v. Bolster, 122 Mo. App. 144; State v. Aloe, 152 Mo. 466; State ex rel. v. Denton, 128 Mo. App. 314; Albridge v. Spears, 101 Mo. 406; St. Louis R. R. Co. v. St. Louis, 92 Mo. 165; State v. Equitable Co., 142 Mo. 337.

*R. Perry Spencer,* General Counsel, and *James D. Lindsay,* Assistant Counsel, for respondent.

(1)   The Commission was without power to grant the application.   By Section 54 of the Public Service Commission Law, Sec. 10463, R. S. 1919, it was declared that the power of railroad corporations to issue bonds and to create liens upon their property situated in this State "is a special privilege, the right of supervision, regulation, restriction and control of which is and shall continue to be vested in the State, and such power shall be exercised as provided by law and under such rules and regulations as the Commission may prescribe." The extent and manner of exercise of the power granted the Commission are specified in Section 57 of the Act, Sec. 10466, R. S. 1919.   It is there provided that a railroad corporation or common carrier may issue bonds "payable at periods of more than twelve months after the date thereof," for the reimbursement of moneys actually expended from income, for acquisition, extensions, improvements and the like, except for maintenance of service and except for replacements, "within five years next prior to the filing of an application with the Commission for the required authorization" provided, there shall have been secured from the Commission an order authorizing such issue.   (2)   The fixing of the five year period is not entirely a Statute of Limitation of time, but it is also a limitation upon the power of the Commission, and this is so, even though it should be held that the limitation as to mere time in the statute cannot annul the contractual provisions of the mortgage.   (3)   If the contractual provisions in issue in the mortgage, applicable to the company and the bond-holders present and prospective, are of such a nature that they cannot be affected or controlled by a statute subsequently passed, which we deny; they cannot, in any event, confer upon the Commission a power which was denied to the Com-

mission by the Legislature.   (4)   The subjects confided to the Public Service Commission as a creature of the statute are defined by the statute creating it.   Its power over those subjects is, in general, exclusive, but that power cannot be extended to other subjects than those enumerated, or exercised beyond the limits prescribed. State ex rel. United Rys. v. Pub. Serv. Comm., 270 Mo. 429.   (5)   Relator is not entitled to a peremptory writ of mandamus.   The writ of mandamus does not run unless the relator shows a clear right to the thing demanded and an imperative duty upon the respondent to perform the act required.   The writ cannot confer power nor enlarge duty to act.   19 Am. & Eng. Ency. Law (2 Ed.) 725; 18 R. C. L. Mandamus, sec. 30; State ex rel. Doud v. Lesueur, 136 Mo. 452; State ex rel. See v. Appling, 191 Mo. App. 589; State ex rel. Crandall v. McIntosh, 205 Mo. 589.   If, as seems clear, the Legislature did not give the Commission power to approve such an issue of bonds as is here under consideration, and did not provide that relator should have a statutory right of approval from the Commission of such bonds, then relator's prayer for the writ cannot be granted.  The act, in its relation to the rights of relator, does not give the right here asserted, and in respect to the powers given the Commission, does not confer the power here sought to be set in motion.

WOODSON, J.—This is a proceeding by mandamus instituted in this court by the relator against the respondent to compel them to authorize the former to issue its bonds in the sum of $278,000 as authorized by its first mortgage, dated March 1, 1910, to be more fully mentioned later.

The facts of the case are undisputed, and appear from the petition for the writ, and the return thereto, which is a demurrer, to be substantially as follows:

The company has the contract right, by the terms of the mortgage mentioned, to issue these bonds on ac-

count of additions and extensions to and of its property made since the date of the mortgage and to sell the same and receive the proceeds thereof. That mortgage was upon all of the property of the company then existing or thereafter acquired. By its terms, the company could not create another first lien upon property thereafter acquired and borrow money by reason thereof, having disabled itself from so doing by reason of the after-acquired property clause, by the terms of which the mortgage covered not only all property in existence at its date but also all thereafter acquired. Hence, it was provided that the company should have the right to borrow money by way of additional first mortgage bonds on a parity with those already issued to the extent of eighty per cent of the value of the property acquired by the company subsequent to the date of the mortgage. It was further provided in this mortgage that after the expenditures were made the company should not issue bonds on account thereof unless and until the company could show that its net earnings, for twelve months preceding the issuance, were equal to twice its interest charges. The company was unable to make such showing as to interest, and hence unable to exercise the right to issue these bonds, until shortly before the date of its application to the Commission. In other words, the company made its application as soon as it was entitled under the terms of its mortgage to issue the bonds. The provisions of the company's first mortgage enabling it to issue these additional bonds constituted a property right springing from the contract.

Application was duly made to the Commission for the requisite authority to issue these bonds. A hearing was regularly held and the authority denied. The Commission found and declared that: (a) the company was given the right by the mortgage to issue the bonds; (b) it had actually made the additions to property claimed; (c) had complied in all respects with the terms of the mortgage contract to be performed by it as a condition

to such issuance; (d) was entitled under the law and facts to be authorized by the Commission to make such issue, and the Commission should and would authorize the·same, save and except only for the fact that a part of the expenditures occurred more than five years prior to the application to the Commission for such authority, and that the Commission was prohibited by the provisions of Section 57 of the Act from authorizing the issuance of bonds for additions made more than five years previous to the application.

The company was not remiss in failing to apply for authority to issue these bonds within five years after the expenditures. As stated, it could, under the mortgage, issue additional bonds only when it could show net earnings double the interest charges. This showing it could not make previous to the date of the application. This fact is pleaded and is, of course, admitted by the demurrer.

The Commission held that it was prohibited by a provision of Section 57 of the Public Service Commission Act from granting such authority where such expenditures have occurred more than "five years next prior to the filing of an application with the Commission for the required authorization."

Under these circumstances it is contended that in the event that such quoted provision is not applicable or for any reason is void, then the Commission, having found that but therefor it should and would grant the authorization, the company is entitled to have the Commission compelled to grant the authority as a mere ministerial act.

The first contention of counsel for relator is stated in the following language:

"The five-year limitation provision, if applied to the mortgage contract in question, is unconstitutional, null and void and constitutes no defense for the failure of the Commission to grant the authority in reliance thereon because (a) such provision so applied impairs the obligations of the mortgage contract, and (b) de-

prives the company of its property, i. e., its vested right to issue these bonds and receive the proceeds thereof, without due process of law.

"There can be no question but what the mutual rights of the parties as stated in the mortgage are protected by Section 10 of Article I of the Constitution of the United States, which provides, among other things, that 'no State shall . . . pass any law . . . impairing the obligations of a contract.' The rulings of the Supreme Court of the United States are all one way upon that subject. [6 Ency. U. S. Sup. Ct. Reports, 765, 782, 874; Fletcher v. Peck, 6 Cranch. 87, 137, 3 L. Ed. 162, 178; Green v. Biddle, 8 Wheat. 1, 5 L. Ed. 547, 570; Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. Ed. 629, 657, 663; Ogden v. Saunders, 12 Wheat. 213, 316, 6 L. Ed. 606.]"

There cannot be any doubt but what the five-year limitation of the Public Service Commission's right to authorize the issue of the bonds in question is an impairment of the company's contract right to issue the bonds in question, and for that reason is unconstitutional and void, without such limitation can be sustained upon the ground that it is a reasonable police regulation.

That the State under its police power, within reasonable limitation, has the authority to regulate or prohibit the issuance of bonds secured by mortgage upon the properties of public service corporations goes without saying, but that does not mean that the State has the absolute arbitrary right or power to so do, for five years or for any other period of time, unless it appears that the exercise of such authority is in the interest, protection or promotion of the public good, defined by the State and Federal courts, but not otherwise. [State v. Smith, 233 Mo. 242, 1. c. 265; State v. Fisher, 52 Mo. 174, 1. c. 177; United States v. D. & H. Co., 213 U. S. 366; Harriman v. Interstate Comm., 211 U. S. 411.]

From the facts in this case it does not appear that the public good will in any way be served by withholding

from the company the authority to issue the bonds mentioned, but it is inferable, at least, that the public good will be promoted and served by their issuance, because it is always beneficial to the public interest that the railroads of the country should be maintained and improvements made in the way of betterments, which the facts in this case show was the design, to pay for improvements made by the company.

For the reasons stated we are of the opinion that the alternative writ heretofore issued should be made permanent. It is so ordered. All concur, *David E. Blair, J.,* in separate opinion; *James T. Blair, C. J.,* not sitting.

DAVID E. BLAIR, J. (concurring).—I agree that Section 57 of the Public Service Commission Act is unconstitutional in so far as it affects the rights of relator to issue bonds under its mortgage issued before the passage of such act and that no considerations based upon the police power of the State make such act valid as to such mortgage.

I fear the language used in the majority opinion may be regarded as holding that said Section 57 is unconstitutional and void in fixing a five-year limitation for the approval of bonds authorized by mortgages on the property of public utilities, even though such mortgages are executed subsequent to the passage of the Public Service Commission Act. That question is not involved in this case.

For the reason stated I concur in the result.

ON MOTION FOR REHEARING.

DAVID E. BLAIR, J.—The record shows my concurrence in a separate opinion in the result reached in the majority opinion in this case. When the motion for rehearing was passed on I had concluded that I was in error in concurring in the result and voted to sustain the motion for rehearing, and as no opinion was written in support of the court's action in overruling the motion

for rehearing I feel constrained to state my reasons for favoring such rehearing.

The majority opinion holds and the order entered requires that respondent must approve bonds issued or to be issued under the terms of relator's first mortgages to reimburse relator for certain expenditures made more than five years prior to the date of the application filed with respondent for authority to issue same.

The Legislature has not empowered respondent to approve bond issues for expenditures for such improvements completed more than five years before the date of the application. Respondent has no powers not conferred upon it by the Legislature and this court has no power by judicial action to extend or broaden those powers and should not undertake to compel respondent to perform any act it is not empowered by the Legislature to perform.

The Legislature attempted to provide a period of grace for the approval of bonds issued to reimburse railroads for money expended out of income for certain proper purposes prior to five years before the filing of the application, if such application be filed before January 1, 1914. [Sec. 10466, R. S. 1919.] Relator was prohibited by the very terms of its mortgage and the state of its earnings from taking advantage of such period of grace. Of course, the Public Service Commission Act could not thus ruthlessly cut off relator's right to issue bonds provided for by its first mortgage antedating such enactment. Such legislation is violative of our Constitution as an impairment of existing contracts.

I think we should have denied the permanent writ, and held the issue of bonds sought by relator to be valid under the peculiar circumstances here existing without application to or order from respondent.

For these reasons, I desire to withdraw my separate concurring opinion, and to be noted as dissenting to the majority opinion, and also marked, as dissenting to the action of my brethren in overruling respondent's motion for rehearing.