————o————

STATE OF MISSOURI, Respondent, vs. JOHN FISHER, Appellant.

1 *Laws in restraint of traffic or alienation of property— Constitutionality—Police regulations.*—A law, which unnecessarily and oppressively restrains a citizen from engaging in any traffic, or disposing of his property, is void, even though passed under the specious pretext of a police regulation; but if it is passed in good faith, for the purpose of preserving the public health, and abating nuisances, and contains only the necessary limitations, it is valid. [Sess. Acts 1872, p. 265, and ordinance of City of St. Louis relating thereto, affirmed.]

*Appeal from St. Louis Criminal Court.*

*H. A. Clover, and Lackland, Martin & Lackland*, for Appellant.

The act of the Legislature entitled, "An act to preserve the health of the inhabitants of St. Louis County, by providing for the abatement of nuisances, and regulating the traffic in the carcasses of dead animals, within said county," approved March 14th, 1872, (See Sess. Acts of 1872, p. 265,) is void.

1st. The act proposes to create a monopoly of the trade of rendering, steaming and tanking of the remains of dead animals.

2nd. Because the act pretends to make it the duty of the City Contractor to pay one-half of the market value only for the remains of dead hogs, and virtually compels the owner or shipper to sell to him.

3rd. Because the law in reality takes away the right of the appellant to carry on the trade set out therein, and bestows it on one man.

4th. The Legislature has no power either directly or indirectly to prohibit one person from carrying on a trade and

giving another the sole privilege of prosecuting said trade.

In support of the above propositions, the following cases are cited: Sedgwick on Constitutional Law, 338, 515 and 465; 11 Wend., 539 ; 17 Wend., 287; 3 Page, 45 ; Matter of Albany Street, 11 Wend., 149 ; Varrick vs. Smith, 5 Paige, 137; Matter of John and Cherry Streets, 19 Wend., 659 ; Taylor vs. Porter, 4 Hill, 140 ; Gardner vs. Trustees of Newburg, 2 John. Ch., 162; Bradshaw vs. Rogers, 20 John, 103 ; Matter of Furman Street, 17 Wend., 649; Dickey vs. Tennison, 27 Mo., 375.

*Slayback & Haeussler*, for Respondent.

The object of the law was not to create a monopoly, but to protect the public.

WAGNER, Judge, delivered the opinion of the court.

The defendant was prosecuted by information in the Court of Criminal Correction, for violating an act of the Legislature entitled, "An act to preserve the health of the inhabitants of St. Louis County, by providing for the abatement of nuisances and regulating the traffic in the carcasses of dead animals," (Sess. Acts 1871, p. 265.) The second count of the information on which the trial was had charged that the defendant did unlawfully boil, render and steam the carcasses and remains of six dead hogs, he not being the owner of them, and not being at the time a butcher or pork packer, nor a person licensed or authorized to boil, steam or render the carcasses of dead animals. The defendant was convicted and sentenced to pay a fine. We might well dispose of this case on the ground that there was no evidence to support the charge in the information, but as counsel have raised the point and contended that the whole act is void, because it creates a monopoly and is in restraint of trade, we will briefly consider the question.

By the first section of the act, the purchasing of the carcasses of dead animals, for the purpose of boiling, steaming and rendering the same, and the rendering and steaming of the carcasses of such dead animals within the County of St.

Louis is declared to be a misdemeanor, except in certain enumerated cases.

The second section of the act provides that no person or persons shall purchase the carcass or remains of any dead horse, mule, ass, ox, steer, cow, sheep, hog, goat or other animal, (unless the same shall have been slain for food,) found or brought within the County of St. Louis, or boil, render or steam any such carcass or remains within said county, (unless he shall be the owner thereof,) provided that any butcher or pork packer may steam, boil or render any carcass or remains of any such dead animal for purposes other than for food, or any material entering into or pertaining to food, when the same shall have been purchased by, or consigned to such butcher or pork packer.

The third section affixes a penalty for violating the act, and provides further that the foregoing provisions shall not be construed to apply to the person or persons licensed or authorized by the City of St. Louis to boil, steam or render the carcasses of dead animals under any ordinances of, or contracts with the City ; but no such person or persons, so licensed or authorized by the city, shall be permitted to boil, steam or render any such carcasses or remains of dead animals in any other place than that by the ordinances of said city provided ; and provided always that such person or persons so licensed or authorized to steam, boil or render the carcasses or remains of any such dead animals, shall not acquire or be possessed of any right to, or property in any such carcasses or remains of any such dead animals, unless he or they shall pay therefor at least one-half of the marketable value of the carcass or remains of such dead hog, as such marketable value was at the time such dead hog was alive.

In accordance with the authority contained in the above recited act, the City of St. Louis passed an ordinance giving to certain persons therein named, the exclusive privilege of removing dead animals, and allowing them to boil, steam and render the carcasses of the same, on boats outside of the city, taking a bond from them for the prompt removal of all such

State v. Fisher.

dead animals, and prohibiting all other persons from in any manner interfering or removing or using the dead carcasses, except as provided in the act.

The act was undoubtedly designed as a police regulation for the purpose of preserving the public health. A law which unnecessarily and oppressively restrains a citizen from engaging in any traffic, or disposing of his property as he may see fit, although passed under the specious pretext of a preservative of the health of the inhabitants, would be void. Such a law would be unreasonable, and would deprive the people of the rights guaranteed to them by the organic law of the land. But if the regulation or prohibition contains nothing more than the necessary limitations, and is passed in good faith for the purpose of preserving the public health, and abating nuisances, it is not liable to objection. No man has an inalienable right to produce disease, or trade in that which is noxious, and in every society some minor rights are surrendered for the general good.

The first section of the act forbids the purchase of the carcasses of dead animals for the purpose of boiling, steaming and rendering the same, and prohibits them from being boiled, steamed and rendered within certain limits. It is perfectly apparent that nothing can be more obnoxious or offensive, or even detrimental to the public health, than boiling, steaming and rendering the carcasses of dead animals. It is at all times disagreeable, but in the summer months it would be intolerable. If the privilege of purchasing such animals was unrestricted and depended on the mere volition of the parties, then no absolute arrangement could be effected by which the sanitary or police regulations could be carried out. Before they were sold, or the price was agreed upon by the parties, they would lie and putrify, and produce infection and disease. Therefore the only safe and practicable mode of arresting and destroying the evil is to confine the removal to persons who act under a license or contract, and who are bound to remove the carcasses promptly, and dispose of them in a way and at a place where the health of the inhabitants will not be interfer-

ed with or endangered. The act does not molest the owners of such dead animals. They have a right to use the same if they choose to do so, and butchers and pork packers when they possess the animals, either by purchase or consignment are allowed the privilege of steaming, boiling and rendering them for their own purposes, and for their own account.

We see nothing in the provisions of the act but what we think might rightfully be passed and enforced as a sanitary and police regulation. It is the duty of every well ordered government, whether State or municipal, to preserve the public health, and provide for the abatement of nuisances. Quarantine laws interfere with the free use of private property and retard and prevent locomotion, yet the health, safety and welfare of the inhabitants of a community demand their enforcement, and they have been invariably upheld as necessary police regulations.

So, railroads have been compelled to fence their tracks and assume onerous burdens without regard to their charters, and these requirements have been sustained on the ground that they were police regulations conducing to the safety of the people.

This act is not distinguishable in principle from the class of cases above adverted to. If anything would be a greater nuisance, or would more effectually destroy the health of the inhabitants of a great city, than hawking the carcasses of dead animals about the streets for sale, and steaming, boiling and rendering them, I am at a loss to conceive what it would be.

I think therefore that the law is not obnoxious to the objections made against it.

But the case must be reversed for another reason. The second count on which the defendant was tried, charged him with steaming, boiling and rendering the hogs, and there was not a particle of evidence to sustain the verdict. The evidence was that the defendant took the hogs from the stock yard and was immediately arrested, and that is all that is shown. It does not appear that there was any evidence whatever, tending to prove that he was guilty of the offense for

which he was arraigned. For this reason the judgment must be reversed and the cause remanded. The other judges concur.