[No. 17284.   Department One.   February 14, 1923.]

CARROLL CORNELIUS et al., Appellants, v. THE CITY OF
SEATTLE et al., Respondents, K. KOSEKI AND
T. DOI, Interveners and Appellants.[1]

CONSTITUTIONAL LAW (115, 125)—EQUAL PROTECTION OF LAWS—
DUE PROCESS OF LAW—PROHIBITION OF OCCUPATIONS OR BUSINESS.
An ordinance granting an exclusive franchise for the removal of
swill or food garbage is not violative of the constitutional prohibi-
tions against the deprivation of property without due process of
law or the denial of the equal protection of the laws, since there
is no property right in such garbage, notwithstanding its market
value as hog food.

SAME (115, 125).   The collection and disposal of garbage is a
public service, outside the rule of common occupations, which a city
may restrict to citizens, without violating the constitutional rights
of aliens to engage in business and to the equal protection of the
laws.

TREATIES (2)—CONSTRUCTION—RIGHT TO "CARRY ON TRADE"—PUB-
LIC WORK—RIGHT OF ALIENS.   An ordinance providing for the let-
ting of a contract to citizens of the United States for the collection
and disposal of garbage, being for a public service outside the rule
of common occupations, does not violate the treaty between Japan
and the United States, guaranteeing subjects of Japan the right to
"carry on trade" on the same terms as native citizens or subjects.

MUNICIPAL CORPORATIONS (27, 41)—POWERS—ORDINANCE—JUDI-
CIAL REVIEW—MOTIVES.   The courts cannot inquire into the motives
of members of a city council in voting for an ordinance, which was a
proper exercise of the police power, on allegations of fraud and in-
tent to create a monopoly; nor can a health ordinance be impeached
by showing that it was not considered as a health or sanitation
measure.

MUNICIPAL CORPORATIONS (99) — HEALTH REGULATIONS — ORDI-
NANCE—VALIDITY.   An ordinance authorizing the letting of a contract

[1]Reported in 213 Pac. 17.

for the disposal of garbage to the highest bidder is not objectionable as a revenue measure under the guise of the police power, when there is no showing that it is productive of revenue.

SAME (99). There is no variance between such an ordinance and a contract let covering only places of business, where the ordinance authorizes administrative officers to divide the city into districts for the purpose of facilitating the collection of the garbage.

Appeal from a judgment of the superior court for King county, Frater, J., entered December 13, 1921, upon granting a nonsuit, dismissing an action for an injunction. Affirmed.

*Guie & Halverstadt* and *Elias A. Wright & Sam A. Wright,* for appellants.

*Walter F. Meier* and *Charles T. Donworth,* for respondent City of Seattle.

*Roberts & Skeel (Frank A. Steele,* of counsel), for respondent Pacific Meat & Packing Company.

FULLERTON, J.—This is an action brought by Carroll Cornelius and others to enjoin the enforcement of an ordinance of the city of Seattle, and to enjoin the operation of a contract let thereunder. Following the filing of the complaint, appellants Koseki and Doi were permitted to intervene as plaintiffs. Demurrers to the complaint and complaint in intervention were overruled and the cause was tried on its merits upon an answer denying the material allegations of the complaints. At the conclusion of plaintiffs' case, a motion for a nonsuit was granted and judgment entered accordingly, from which the plaintiffs and plaintiffs in intervention have appealed.

The ordinance in question requires the keeper of any hotel, restaurant or public eating place to place all swill in sanitary containers, and provides for the letting of a contract or contracts to responsible citizens of the United States by the city board of public works

to collect and remove all such swill from the city under the supervision of the commissioner of health. A bond from the contractor to secure faithful performance is required, and it is made a penal offense for any other person to collect such swill or convey it through the streets. Pursuant to the terms of the ordinance, the board of public works, prior to the commencement of this action, let a contract to the respondent Pacific Meat & Packing Company to remove the swill from a described district of the city.

The complaint in the case is voluminous, yet to discuss the various assignments of error it becomes necessary to set it forth at some length, as many of the assignments of error go to the rejection of evidence offered for the purpose of proving the allegations of the complaint. Following is the substance of the complaint: The plaintiffs are proprietors of restaurants, hotels or other public eating houses, and in the conduct of such businesses there is a constant accumulation of food garbage or swill, which, prior to the passage of ordinance mentioned, was sold by them to persons who used it for feeding hogs. The accumulation, retention and collection of such swill was done in an approved and sanitary manner, and was not dangerous to the public health, nor a nuisance. Because of the large amount of swill accumulated each day in Seattle, a large number of hog ranches have been established near that city, many of which are owned by subjects of the Emperor of Japan. It is charged that, some five years prior to the commencement of this action, one I. W. Ringer started a large hog ranch near the city of Seattle, the operation of which was not a financial success, and that Ringer could not compete with other ranch owners in purchasing swill from the plaintiffs; and that because of that situation and to enable him to obtain the swill with-

out compensation to the plaintiffs, Ringer appealed to Phillip Tindall, a councilman of the city, for legislation to that end. It is alleged that an appeal was made to the prejudices of Tindall on the ground that Japanese subjects were engaged in buying and collecting this swill and feeding it to hogs, and that because of such prejudice Tindall caused to be introduced and passed by the city council an ordinance containing provisions similar to this ordinance. The ordinance was vetoed by the mayor, and the veto was sustained by the city council.

It is next alleged that the respondent Pacific Meat and Packing Company was incorporated on October 20, 1920, with Ringer as president and a member of the board of trustees, to take over Ringer's hog ranch and other assets; and that Ringer and Tindall continued their efforts to secure legislation to secure to the company the hog food from the plaintiffs, with the result that the ordinance in question was passed by the council. This ordinance was vetoed by the acting mayor, but passed over such veto; the veto message being set forth in the complaint.

It is then alleged that the ordinance was not for the benefit or protection of public health, but was a part of the plan to secure to Ringer the swill and to bar Japanese from buying swill in Seattle, and was arbitrary, unreasonable and void. It is further alleged that the ordinance is in violation of §§ 3 and 12, of Art. 1, of the state constitution, the due process and equal protection clauses; also of § 1 of the fourteenth amendment to the constitution of the United States; and is also contrary to, and in violation of, an existing treaty between Japan and the United States.

The appellants Koseki and Doi are subjects of Japan. They allege that, for some years past, they have been operating hog ranches near Seattle and buy-

ing food garbage or swill from the plaintiffs; that they have large sums invested; that they had been collecting this garbage in a sanitary manner and without danger to the health of the inhabitants of the city, or to the public health, and at all times have strictly conformed to all ordinances, rules and regulations of the city appertaining thereto. They also allege that the ordinance is in violation of the above mentioned sections of the state and Federal constitutions, and of the treaty of the United States of America with Japan; further alleging that, if the defendants are not prevented by the court from doing so, the interveners will be arrested on attempting to collect or remove food garbage which they have contracted to purchase from the plaintiffs, and that their business and the trade which they have built up under such contracts will be irrevocably lost and destroyed to them and each of them.

On the trial, the first witness called by appellants was the mayor of the city who had vetoed the original bill. While he was on the stand, the plaintiffs made the following offer of proof:

"Mr. Halverstadt: Then I offer to prove for the purpose of the record that after the passage of council bill 30,216, during the time it was in the possession of the mayor under the city charter for his approval or disapproval, a meeting was held in his office at the request of Phillip Tindall, then a councilman of the city of Seattle, and he was and at all times had been a proponent of the bill, accompanied by I. W. Ringer, who was the individual who had interested Mr. Tindall as councilman in the passage of this bill, at the specific request and for the benefit of a hog ranch which he owned or controlled at that time, that Mr. Tindall as councilman represented the proponents of the bill; that at that time Mr. Tindall stated that the competition in the collection of this food garbage from these restaurants was such that the ranch owned by Mr.

Ringer,—the hog ranch owned by Mr. Ringer was being crowded out of business and that that competition was fostered in part by Japanese hog raisers adjacent to the city of Seattle, who had been collecting and buying this food garbage from these restaurants, and that the competition for the same had driven the price to such a figure that Mr. Ringer for his company could not pay the price, and in substance that the ranch was going to have to go out of business as a result of it; that he further stated that the passage of the ordinance was necessary in order to prevent the Japanese hog raisers from securing any of this food garbage; that they were monopolizing the business of raising hogs in the territory adjoining the city of Seattle, or in the immediate northwest, and that the only way their activities could be curtailed was by the passage of this council bill which prohibited them from collecting or getting or taking from the city of Seattle or buying or otherwise securing any of this food garbage.

"That at no time during that entire discussion was it even suggested that this was a health measure or was passed because of any need of the public health, public safety, public sanitation or anything else in the city of Seattle, but that the two reasons for the passage of the bill and the two needs were, first, to aid this ranch run by Ringer and to drive the Japanese hog raisers out of business."

The offer was rejected, as likewise was the original of the mayor's veto message and other offers of like kind.

Appellants make eleven assignments of error, most of them growing out of the rejection by the court of offers of proof similar to that which we have set out. It is not necessary to discuss these errors separately, as they naturally fall under the following heads, as pointed out in appellants' brief: (1) The ordinance is arbitrary, unreasonable, unconstitutional, and void. (2) The plaintiffs and interveners should have been permitted to prove their complaints. (3) The contract

let by the board of public works to the Pacific Meat & Packing Company is invalid and not within the terms of the ordinance, even if the ordinance is valid.

It is claimed, first, that the ordinance violates §§ 3 and 12, of Art. 1, of the fourteenth amendment to the constitution of the United States, in that it deprives these appellants of property without due process of law and denies to them the equal protection of the law. This contention is predicated upon the premise that appellants have a property right in the swill, as it has a market value as hog food. That there is no such property right is now firmly established by the overwhelming weight of authority.

In *Valley Spring Hog Ranch Co. v. Plagmann*, 282 Mo. 1, 220 S. W. 1, the supreme court of Missouri, passing upon a similar contention in an action involving an ordinance very like the one here, said:

"It is next urged that the ordinance is destructive of property rights. It is true that there may be an ownership of garbage from the kitchen, but the value of the owner's rights therein is so inconsequential that they are absorbed and lost in the greater rights of the state to protect such owner and the public at large from the dire effects of improper methods in the handling and disposition of the same."

In *Gardner v. Michigan*, 199 U. S. 325, the supreme court of the United States passed upon a similar contention, saying:

"Touching the suggestion that garbage and refuse are valuable for the manufacture of merchantable grease and other products it is sufficient, in view of what we have said in the other case, to remark that it was a controlling obligation of the city, which it could not properly ignore, to protect the health of its people in all lawful ways having relation to that object; and if, in its judgment, fairly and reasonably exercised,

the presence of garbage and refuse in the city, on the premises of householders and otherwise, would endanger the public health, by causing the spread of disease, then it could rightfully require such garbage and refuse to be removed and disposed of, even if it contained some elements of value. In such circumstances, the property rights of individuals in the noxious materials described in the ordinance must be subordinated to the general good. If it be said that the city might have adequately guarded the public health and at the same time saved the property rights of its owner on whose premises garbage and refuse were found, the answer is that the city evidently thought otherwise, and we cannot confidently say that its constituted authorities went beyond the necessities of the case and exceeded their proper functions when they passed the ordinance in question. Those ordinances cannot, therefore, according to well-settled principles, be held to be wanting in the due process of law required by the Constitution.''

To the same effect are: *Atlantic City v. Abbott,* 73 N. J. L. 281, 62 Atl. 999; *Salt Lake City v. Bernhagen,* 56 Utah 159, 189 Pac. 583; *Pantlind v. City of Grand Rapids,* 210 Mich. 18, 177 N. W. 302; *Grand Rapids Board of Health v. Vink,* 184 Mich. 688, 151 N. W. 672, and the many cases collected and discussed in the note in 15 A. L. R. 289.

In *State v. Lovelace,* 118 Wash. 50, 203 Pac. 28, and *Smith v. Spokane,* 55 Wash. 219, 104 Pac. 249, 19 Ann. Cas. 1220, this court sustained ordinances granting exclusive privileges for the removal of garbage.

The interveners in this appeal claim a violation of the same constitutional provisions upon the theory that they, as aliens, are barred from bidding for the contract. They also claim a violation of rights guaranteed them by a treaty existing between Japan and America. It may be admitted without cavil, as is so thoroughly and conclusively argued in the brief of ap-

pellants, that the fourteenth amendment applies equally to aliens as to citizens. *Yick Wo v. Hopkins,* 118 U. S. 356; *Wong Wing v. United States,* 163 U. S. 228; *United States v. Wong Kim Ark,* 169 U. S. 649; *Truax v. Raich,* 239 U. S. 33.

It is also true that common occupations and businesses of the community are protected under these provisions of the constitution from prohibition by the legislative power. But, as we have seen, the right of a city to prohibit scavenging and garbage collecting has been repeatedly sustained as not falling within the rule of common occupations and businesses. The service performed is a public service and the contractor becomes in effect a public employee. And this court has held in *Jahn v. Seattle,* 120 Wash. 403, 207 Pac. 667, that a city may limit public employment to citizens of the United States. In that case it is said:

"These are matters which the people have the right to determine for themselves without interference by the courts, after they have spoken their will, as here, by the adoption of a charter and the passage of ordinances by their legislative representatives. The courts will no more attempt to say what wages must be paid upon public work, what hours of employment shall prevail, or the class of people who shall perform that work, than they will attempt to interfere and prescribe the material to go into the work, the manner of construction or other engineering details of a public improvement. This we have said in the case of *Malette v. Spokane,* 77 Wash. 205, 137 Pac. 496; Ann. Cas. 1915D 225, 51 L. R. A. (N. S.) 686, where the whole subject of minimum wages upon public work is exhaustively considered. On the same principle, the supreme court of the United States, in *Heim v. McCall,* 239 U. S. 175, 36 S. Ct. 78, Ann. Cas. 1917B 287, and *Crane v. People of State of New York,* 239 U. S. 195, 36 S. Ct. 85, later upheld provisions relating to the non-employment of aliens upon public work. It is unnecessary to cite the large number of cases from Fed-

eral and state courts which have sustained this principle when considering the eight-hour law, minimum wages and alien employment provisions in regard to public work.''

Clearly, we think the ordinance violates none of the constitutional provisions cited.

Neither is the right to be employed by the city such a right as is protected to the subjects of the Emperor of Japan by the existing treaty between the United States and Japan. By the terms of the treaty, subjects of the Emperor of Japan are insured the liberty ''to carry on trade, wholesale and retail . . . and generally to do anything incident to or necessary for trade, upon the same terms as native citizens or subjects, submitting themselves to the laws and regulations there established.'' This does not confer a right to engage in public work. The supreme court of the United States ruled this question contrary to the contention in *Crane v. People of State of New York*, 239 U. S. 195, and *Heim v. McCall*, 239 U. S. 175, in which it is held that similar provisions in the treaty between the United States and Italy did not guarantee the privilege of working on public contracts.

The next question is that involved in the court's refusal to permit evidence to prove the allegations of the complaint relative to the motives that actuated members of the city council in voting for the bill. Conceding all that is set out in the complaint to be true upon this phase of the case, there is nothing therein which can be considered by the courts. Under no consideration or circumstance will the motives of legislators, considered as the moral inducement for their votes on a particular enactment, be inquired into by a judicial tribunal, and no principle of law is more firmly established. In *Soon Hing v. Crowley*, 113 U. S. 703, the supreme court of the United States, in passing upon

the constitutionality of an ordinance regulating laundries, said:

"The principal objection, however, of the petitioner to the ordinance in question is founded upon the supposed hostile motives of the supervisors in passing it. The petition alleges that it was adopted owing to a feeling of antipathy and hatred prevailing in the City and County of San Francisco against the subjects of the Emperor of China resident therein, and for the purpose of compelling those engaged in the laundry business to abandon their lawful vocation, and residence there, and not for any sanitary, police, or other legitimate purpose. There is nothing, however, in the language of the ordinance, or in the record of its enactment, which in any respect tends to sustain this allegation. And the rule is general with reference to the enactments of all legislative bodies, that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the Acts, or inferable from their operation, considered with reference to the condition of the country and existing legislation. The motives of the legislators, considered as the purposes they had in view, will always be presumed to be to accomplish that which follows as the natural and reasonable effect of their enactments. Their motives, considered as the moral inducements for their votes, will vary with the different members of the legislative body. The diverse character of such motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth, precludes all such inquiries as impracticable and futile. And in the present case, even if the motives of the supervisors were as alleged, the ordinance would not be thereby changed from a legitimate police regulation, unless in its enforcement it is made to operate only against the class mentioned; and of this there is no pretense."

This rule was early adopted by this court in *State ex rel. News Publishing Co. v. Milligan*, 3 Wash. 144, 28 Pac. 369, it being there said, at pp. 151-2:

"No principle of equity jurisprudence is better established than that courts of equity will not sit in review of proceedings of subordinate, political or municipal tribunals, and that where matters are left to the discretion of such bodies the exercise of that discretion in good faith will not, in the absence of fraud, be disturbed."

This rule has been followed in: *Ewing v. Seattle,* 55 Wash. 229, 104 Pac. 259; *Allen v. Bellingham,* 95 Wash. 12, 41, 163 Pac. 18, and *Twichell v. Seattle,* 106 Wash. 32, 179 Pac. 127. See, also, McQuillin, Municipal Ordinances, § 161; 19 R. C. L. 904.

In the case of *People v. Gardner,* 143 Mich. 104, 106 N. W. 541, involving an ordinance very similar to the one attacked here, the contention was made, as is made here, that the ordinance was passed for the purpose of giving a monopoly to a certain person. In that case the court said:

"The question of fraud. Counsel offered to produce testimony which they said would tend to show that the purpose of the council was fraudulent, and to create a monopoly of the garbage business in the hands of the contractor. We have alluded to the fact that, in passing ordinances, a common council acts under delegated authority, as an inferior legislative body. Nothing is better settled than the rule that the motives of a Legislature or of the members cannot be inquired into, for the purpose of determining the validity of its laws."

Following a discussion of the principle, and pointing out that in Dillon on Municipal Corporations the application of the rule to cases involving actions by legislative bodies of cities is questioned, the opinion continues:

"The suggestion of Dillon has not received the approval of the courts or jurists of the country. Of the general subject Mr. Justice Cooley says, in Const. Lim. (6th Ed.) p. 220: 'From what examination has been

given to this subject, it appears that whether a statute is constitutional or not is always a question of power —that is, a question whether the Legislature in the particular case, in respect to the subject-matter of the act, the manner in which its object is to be accomplished, and the mode of enacting it, has kept within the constitutional limits and observed the constitutional conditions. In any case in which this question is answered in the affirmative, the courts are not at liberty to inquire into the proper exercise of the power. They must assume that legislative discretion has been properly exercised. If evidence was required, it must be supposed that it was before the Legislature when the act was passed; and if any special finding was required to warrant the passage of the particular act, it would seem that the passage of the act itself might be held equivalent to such finding. And although it has sometimes been urged at the bar that the courts ought to inquire into the motives of the Legislature where fraud and corruption were alleged, and annul their action if the allegation were established, the argument has in no case been acceded to by the judiciary, and they have never allowed the inquiry to be entered upon The reasons are the same here as those which preclude an inquiry into the motives of the governor in the exercise of a discretion vested in him exclusively. He is responsible for his acts in such a case, not to the courts, but to the people.' He has cited innumerable cases in support of the text, and, upon page 257, has distinctly applied the rule to municipal ordinances in the following language: 'And the same presumption that legislative action has been devised and adopted on adequate information and under the influence of correct motives will be applied to the discretionary action of municipal bodies, and of the State Legislature, and will preclude, in the one case as in the other, all collateral attack.' The note in connection with the foregoing indicates that the Ohio case above cited was not overlooked. From what has been said it should be inferred that the testimony offered was not proper for the purpose of showing fraudulent action by the council.''

The same principle of law would prevent the court from receiving the evidence offered tending to show that the measure was not considered as a health or sanitation measure. We must take the ordinance at its face value, and if we can conceive of a state of facts existing that would sustain it as a proper exercise of the police power, such state of facts will be presumed to have existed. *State v. Pitney,* 79 Wash. 608, 140 Pac. 918, Ann. Cas. 1916A 209.

The argument that the city by this ordinance has enacted a revenue measure under the guise of the police power is fully answered by what was said by this court in *State v. Lovelace,* 118 Wash. 50, 203 Pac. 28.

The final contention of appellants, that there is a variance between the ordinance and the contract let, is also without merit. Under the direct terms of the ordinance, authority has been given to administrative officers to not only make rules and regulations governing the keeping, collection and disposal of swill, but to divide the city into districts for the purpose of facilitating the collection of swill. Provision is made for the letting of more than one contract and the fact that the contract here attacked covers only places of business would not vitiate it.

As pointed out by the court below, the demurrers to the complaints should have been sustained, but the same result has been reached by the trial and the judgment is affirmed.

BRIDGES, PARKER, MITCHELL, and TOLMAN, JJ., concur.