[No. 39277.   En Banc.   January 19, 1968.]

THE CITY OF SPOKANE, *Appellant,* v. LARS CARLSON, JR., *Respondent.**

*Reported in 436 P.2d 454.

*Norman dePender, Edward E. Shaw, Dudley L. Wilson, Don R. Shaw, Jr.,* and *Robert Atkinson,* for appellant.

*Randall, Danskin, Lundin & Allison,* by *Paul J. Allison* and *David L. Broom,* for respondent.

ROSELLINI, J.—The defendant was convicted in justice court of violation of Spokane City Ordinance No. C 13451,[1] under the provisions of which the city reserved to itself the exclusive right to collect garbage and refuse in the city. He

---

[1] The ordinance provides, in part:

"Section 1. The maintenance of health and sanitation require and it is the intention hereof to make the collection, removal and disposal of garbage and refuse and dead animals within the City of Spokane compulsory and universal.

"Section 2. Terms used in this ordinance shall have the meaning herein given to them.

" 'Garbage' shall mean solid wastes from the preparation, cooking and dispensing of food, and from the handling, storage and sale of food or food products.

" 'Refuse' shall mean all waste and discarded materials, including rubbish and debris, waste and discarded food, animal and vegetable matter, waste paper, cans, glass, ashes, night soil, offal and boxes. 'Waste' shall not include materials manufactured into by-products."

appealed to the superior court, which set the conviction aside, holding that the ordinance was unconstitutional insofar as it included within its definition of garbage the inorganic refuse picked up and hauled by the defendant. The city has appealed.

The evidence showed that the defendant obtained a permit from the Washington Public Service Commission (now the Washington Utilities and Transportation Commission) which gave him the right to operate "[i]ntrastate, irregular route, non-radial service as a carrier of industrial and trade waste and refuse (local cartage) in the City of Spokane and in the County of Spokane." The permit was issued June 21, 1961. The evidence also showed that the waste which he carted was inorganic, consisting of cardboard boxes, wooden pallets and steel bands.

The trial court did not dispose of the defendant's contention that his permit authorized him to operate in violation of the city ordinance, but based its disposition of the case on its conclusion that the ordinance, as applied to the defendant's operation, was unconstitutional.

The theory of the trial court was expressed in this language:

> The defendant has a constitutional right to carry on his business and the City only had a right to deprive the defendant of this right under the exercise of its police power, wherein the City could control the collection and disposition of unhealthy, unwholesome, noxious matter, matter offensive to the senses or dangerous to health.

The trial court found that the items carried by the defendant did not fall within the above description.

In *City Sanitary Serv. Co. v. Rausch,* 10 Wn.2d 446, 117 P.2d 225 (1941), this court cited *Gardner v. Michigan,* 199 U. S. 325, 50 L. Ed. 212, 26 Sup. Ct. 106 (1905) wherein it was said that the city has the obligation to protect the health of its people in all lawful ways having relation to that object, and that if, in its judgment, fairly and reasonably exercised, the presence of garbage and refuse in the city would endanger the public health, by causing the spread of disease, then it could rightfully cause such gar-

bage to be removed and disposed of, even though it contained some elements of value. In such circumstances, the United States Supreme Court said, the property rights of individuals must be subordinated to the general good.

Also cited in that case was *Smith v. Spokane,* 55 Wash. 219, 221, 104 Pac. 249 (1909), in which this court held that a garbage ordinance was a valid exercise of the police power, even though, in pursuance thereof, the contract was let to an individual to collect and dispose of the garbage. It was pointed out in that opinion that such ordinances are almost universally sustained, as follows:

> But that the removal and destruction of the noxious, unwholesome substances mentioned in these ordinances tends directly to promote the public health, comfort, and welfare would seem to be beyond question. If so, an ordinance which tends to accomplish these results is a proper exercise of the police power; and from this power is necessarily implied the duty to determine the means and agencies best adapted to the end in view. That that object can best be attained by entrusting the work in hand to some responsible agency under the control of the city, possessing the facilities for carrying it on with dispatch, and with the least possible inconvenience, must be apparent to all. Ordinances conferring the exclusive right to collect garbage and refuse substances upon some department of the city government, or upon a contractor with the city, have almost universally been sustained. *Smiley v. MacDonald,* 42 Neb. 5, 60 N. W. 355, 47 Am. St. 684, 27 L. R. A. 540; *Walker v. Jameson,* 140 Ind. 591, 37 N. E. 402, 39 N. E. 869, 49 Am. St. 222, 28 L. R. A. 679; *In re Vandine,* 6 Pick. 187, 17 Am. Dec. 351; *State v. Fisher,* 52 Mo. 174; *River Rendering Co. v. Behr,* 7 Mo. App. 345; *Alpers v. San Francisco,* 32 Fed. 503; *National Fertilizer Co. v. Lambert,* 48 Fed. 458; *In re Zhizhuzza,* 147 Cal. 328, 81 Pac. 955

The ordinance in that case was sustained as against a contention that it deprived the plaintiff of his right to engage in a lawful occupation to earn a livelihood for himself and his family. The ordinance made it unlawful for any person other than those authorized by the city to carry through the streets "any garbage, night soil, ashes, or any waste or refuse substances, except manure."

This court said in *Smith, supra,* at 220:

This contention cannot be sustained. In all matters pertaining to the public health, nearly if not the entire police power of the state is vested in municipal corporations of the first class. Under its charter and the general laws of the state, the city of Spokane may define and abate nuisances, regulate and prohibit the carrying on of occupations which are of such a nature as to affect the public health, and make all needful rules and regulations for the health, comfort, safety, and well-being of the city and its inhabitants.

In accord are *Wallis v. Fidelity & Deposit Co.,* 155 Wash. 618, 285 Pac. 656 (1930); *Cornelius v. Seattle,* 123 Wash. 550, 213 Pac. 17 (1923) and *State v. Lovelace,* 118 Wash. 50, 203 Pac. 28 (1921).

*Smith v. Spokane, supra,* is cited in an annotation in 83 A.L.R.2d 799, at 819 (1962), as placing this state among the great majority which hold valid ordinances which give the governmental body itself the exclusive right or privilege of operating garbage or rubbish removal services.

■ The cases, insofar as we have been able to ascertain, make no distinction between organic and inorganic garbage or refuse. In fact, it is the general rule that a municipality may make reasonable regulations governing the removal of ashes and other rubbish from private premises. *See* Annot. 15 A.L.R. 309 (1921).

■ An ordinance regularly enacted is presumed constitutional, and the burden of establishing the invalidity of an ordinance rests heavily upon the party challenging its constitutionality. If a state of facts justifying an ordinance can reasonably be conceived to exist, such facts must be presumed to exist and the ordinance passed in conformity therewith. *Lenci v. Seattle,* 63 Wn.2d 664, 388 P.2d 926 (1964) and cases cited therein.

■ The mere fact that the particular refuse picked up and disposed of by the defendant may not have been injurious to the public health does not mean that the city could not reasonably decide that the control of the disposition of such materials was necessary for the protection of the public health and sanitation. It is a matter of common

knowledge that inorganic refuse is frequently mixed with organic refuse. The legislative body of the city could reasonably determine that the possibility of such mixture renders it advisable that all refuse, whether innocuous in itself or not, be dealt with in a controlled and uniform manner. This in itself is sufficient justification for the ordinance regulating the disposition of inorganic as well as organic refuse.

In addition, the city could reasonably find that the manner of disposing of such refuse was a matter of serious public concern, affecting the public health and well-being, and that the public interest required that such disposition be conducted under controlled conditions.[2]

In the case of *Indianapolis v. Ryan*, 212 Ind. 447, 453-54, 7 N.E.2d 974 (1937), annotated at 135 A.L.R. 1305 (1941), the Supreme Court of Indiana said:

But the city was not burdened with the responsibility of showing that the product was offensive or harmful as handled. The Legislature has the right to regulate the disposal of the material if it is dangerous to the public health or welfare, or if it *may become* dangerous. Once it is conceded that there is a public interest in the disposal of such substances, and it cannot be questioned that there is, the government is not required to prove that in each specified case the particular items and substances were handled in such a manner as to be offensive and harmful. . . . Since it may be reasonably believed that a uniform system of collecting and disposing of garbage

---

[2]*See* E. Hopkins & W. Schulze, The Practice of Sanitation (3d ed. 1958). On p. 196 the authors say:

Municipal wastes include garbage, ashes, street sweepings, dead animals, rubbish, and trade wastes. . . . Rubbish includes paper, boxes, boilers, abandoned automobiles, and scrap iron; trade waste includes all of the above as well as waste building materials and factory products.

The disposal of wastes is a governmental function and a service demanded in every urban community.

*See, also,* W. Hobson, The Theory and Practice of Public Health (2d Ed. 1965), wherein it is said, at 80:

The safe disposal of domestic and trade refuse is of comparable public health importance to the safe disposal of sewage. Moist organic refuse encourages the breeding of flies and rats and can be indirectly responsible for the dissemination of many diseases. For aesthetic reasons also, prompt removal of refuse from the vicinity of dwellings is essential.

is necessary in order to protect the public from danger, the Legislature had power to provide for such a uniform system, notwithstanding that in some cases it would otherwise be disposed of without harm to the public. . . .

The statute must be construed as requiring the sanitary department to haul away and dispose of all kitchen refuse from cooking food, which is discarded as a human food, and as forbidding any other person to collect or remove such substances, without regard to the manner in which they are handled, or to whether the substances removed in any particular case are offensive or harmful as handled. It cannot be doubted that private individuals may equip themselves to remove such substances from a few, or many, or all, of the kitchens in the city, in a manner that is just as sanitary and safe as the manner adopted by the city. But the Legislature appears to have determined that it is not safe to depend upon such private removal, and has commanded that the sanitary department of the city remove all of such substances. Such a determination is within the jurisdiction of the Legislature. It cannot be said that it is not justified as a police measure.

The claim of the defendant in that case that the organic refuse, as handled by him, was inoffensive and harmless, is comparable to the claim of the defendant in this case that the refuse which he hauls is harmless. And here, as in that case, this fact does not render the law unconstitutional as applied to the defendant.

The ordinance recites that its purpose is the maintenance of health and sanitation and does not mention safety. We need not decide whether an ordinance can be sustained when it serves a legitimate purpose not referred to in the act itself. But we observe in passing that the public safety is an interest which the police power may protect. As we said in *Smith v. Spokane, supra,* in the exercise of the police power, the city may enact all laws necessary for the comfort, safety, and well-being of the city and its inhabitants. The accumulation of refuse may become a nuisance, constituting a fire hazard, whether or not it is injurious to health. As such it can be abated or its disposition regulated. The collection and disposal of waste materials which constitute a fire hazard should be just as much a governmental

function as the collection and disposal of waste which is a menace to health. *In re Pedrosian*, 124 Cal. App. 692, 13 P.2d 389 (1932); *Matula v. Superior Court*, 146 Cal. App. 2d 93, 303 P.2d 871 (1956).

■ Garbage is defined in Merriam-Webster Third International Dictionary (1961) as "refuse of any kind." In The Random House Dictionary of the English Language (1967), it is defined as "discarded animal and vegetable matter from a kitchen; refuse," and refuse is defined as "something that is discarded as worthless or useless; rubbish, trash, garbage." Thus it should be clear that garbage is a general word describing both organic and inorganic waste. RCW 35.21.120 provides that every city or town may by ordinance provide for the establishment of a system of garbage collection and disposal for the entire city or town or for portions thereof, and award contracts for garbage collection and disposal or provide for it under the direction of officials and employees of the city or town.

Even giving to the word garbage, as used in RCW 35.21.120, the narrow definition given it by the trial court, it does not follow that the city lacks power to regulate the collection of other types of refuse. That power is included within the broad powers given in the constitution, which provides in artice 11, section 11, that any city may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws. It has not been shown that the ordinance conflicts with any general law of this state. Nor has there been any showing that the regulation is unreasonable or unrelated to the end sought to be achieved. Consequently, the defendant failed to meet the burden of showing the invalidity of the ordinance, and the trial court erred in holding it unconstitutional.

The contention of the defendant in regard to his permit is that it is issued pursuant to a general law which is in conflict with the Spokane ordinance. The permit does not expressly grant to the defendant the right to collect garbage in violation of a Spokane ordinance.

■ Contrary to the assumption of both the plaintiff and the defendant, this permit was not issued pursuant to RCW 81.77. That chapter was enacted by Laws of 1961, ch. 295, and did not take effect until July 1, 1961. The permit was issued June 21, 1961, and recites that it is issued pursuant to Laws of 1935, ch. 184. That act declares that it is enacted for the purposes of rendering the highways safe for the use of the general public, providing stabilized service and rate structure for shippers, and regulating the use of the highways for the transportation of property to the extent required by the convenience of the general public. RCW 81.77 does not purport to enlarge those purposes. Thus there is no expression of a legislative intent to provide for the regulation of garbage disposal within cities and towns. Furthermore, RCW 81.77, by its terms, is not applicable to the city of Spokane. See RCW 81.77.020.

Neither of these statutes authorizes the issuance of permits which will relieve the holder of the obligation to abide by local ordinances. It is necessary for one who desires to haul garbage and is not exempt under the provisions of the statutes to obtain a permit in order to operate his vehicles upon the highways, but the permit so obtained does not give him the right to operate his vehicle in violation of other state and local laws. We find no merit in the defendant's contention that the permit issued to him by the Public Service Commission made him immune to the provisions of the Spokane garbage collection ordinance.

The judgment is reversed.

FINLEY, C. J., WEAVER, HUNTER, HAMILTON, HALE, and NEILL, JJ., concur.

HILL, J. (dissenting)—I dissent. We are not concerned with any question of public health. We are not even concerned with the exercise of the police power to require the removal of cardboard boxes, wooden pallets and steel bands (none of which endanger the public health), but which may endanger the public safety if allowed to accumulate. The sole issue in this case is not whether they shall be removed, but who shall remove them. They are being re-

moved and disposed of; the city of Spokane is objecting because the defendant is doing the removing. No one's health or safety or even well-being is endangered. The trial court thought the city was trying to stretch the police power further than it could constitutionally be stretched. So do I.